2024 IL App (2d) 240244-U
Nos. 2-24-0244 & 2-24-0247 cons.
Order filed July 1, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Nos. 24-CF-640 24-CF-642 |
| | ) | |
| BRYANT V. TORRES, | ) ) | Honorable Todd B. Tarter, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Schostok and Mullen concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Trial court's detention orders were not an abuse of discretion, where defendant was charged with multiple firearm offenses involving loaded weapons and was on probation for similar offenses when allegedly committing these crimes.   Affirmed.

¶ 2    Defendant, Bryant V. Torres, timely appeals from the denial of his pretrial release under section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)).   For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4    On March 29, 2024, in case No. 24-CF-640, defendant was charged with armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2022)) (Class X); possession of a weapon by a felon (*id.* § 24-1.1(a)) (Class 2); unlawful use of a weapon (*id.* § 24-1.6(a)(1)) (Class 2); possession of a weapon by a street gang member (*id.* § 24-1.8(a)(2)) (Class 2); sale of a firearm without a valid firearm owner's identification (FOID) card (*id.* 24-3(A)(k)) (Class 4); and possession of a firearm without a valid FOID card (430 ILCS 65/2(a)(1) (West 2022)) (Class 3).   The charges stemmed from an incident that occurred on June 27, 2023, wherein, during a joint investigation between the Elgin Police Department and the Bureau of Alcohol Tobacco and Firearms (ATF), defendant allegedly sold a firearm to an ATF confidential source.

¶ 5    Also on March 29, 2024, in case No. 24-CF-642, defendant was again charged with armed habitual criminal, possession of a weapon by a felon, possession of a firearm without a valid FOID card, and obstruction of justice (720 ILCS 5/31-4(a)(1) (West 2022)) (Class 4).   These charges stemmed from an incident that occurred on March 28, 2024, wherein, while officers were executing a search warrant at defendant's residence, defendant allegedly threw a firearm containing nine live rounds of ammunition out of a sliding glass door onto a grass area.

¶ 6    In both cases, the State petitioned to deny defendant pretrial release, alleging that he was charged with detainable offenses and that no condition or combination of conditions could mitigate the real and present danger he posed to the community.   725 ILCS 5/110-6.1(a)(1) (West 2022).

¶ 7    On March 30, 2024, the court held a hearing on both petitions.   The State entered into evidence the synopses for the underlying offenses, as well as the synopsis from case No. 22-CF-610, for which defendant was out on bond and which reported that defendant, while on parole, was charged with armed habitual criminal and other firearm offenses.   The synopsis in case No. 24-CF-640 reflected that defendant, on June 27, 2023, delivered a firearm to an ATF confidential

source in exchange for funds. Defendant informed the confidential source that the weapon performed with "kick" and did not have a safety. Further, he explained that he previously used the firearm to shoot at several people in a scenario that seemed to match the 22-CF-610 case against him. Upon inspection, it was determined that the firearm was a loaded, 9 millimeter weapon with a defaced serial number. Defendant, who is identifiable by a distinctive facial tattoo, and his actions and statements during the transaction, were captured on audio and video recordings. Further, defendant apparently admitted he was the person depicted in still photos taken during the transaction.

¶ 8    Regarding case No. 24-CF-642, the synopsis reflected that, on March 28, 2024, the Elgin police and ATF were executing a search warrant at defendant's residence. As officers approached, one officer saw a man throw a firearm out of a sliding glass door. The officer recovered the weapon, which was determined to be a loaded, 9 millimeter gun. When interviewing defendant, he stated that he did not throw the gun out the door; however, officers had not mentioned to defendant that anyone threw a gun out of the door.

¶ 9    The State also recounted defendant's criminal history, which included (in addition to various felony juvenile convictions and seven traffic and/or misdemeanor charges filed since December 11, 2023, including a charge of driving under the influence in February 2024): unlawful delivery of a controlled substance (seven years' imprisonment), criminal damage to property (two years' imprisonment), aggravated discharge of a firearm (four years' imprisonment), and, notably, escape from electronic home monitoring (EHM) (two years' imprisonment). Further, the State noted that defendant was a documented member of the Insane Deuces street gang. The State argued that defendant's criminal history, along with the nature and circumstances of these charges, including the fact that each involved the use of a weapon, reflected that his release would be a risk

to public safety. It emphasized that defendant was currently on bond for essentially the exact same charges from a 2022 case, and he clearly did not care about following court orders or abiding by the law because, in case No. 22-CF-610, he was ordered not to commit any additional criminal offenses. Nevertheless, "he clearly has firearms at his disposal. Those firearms have been sold or traded illegally. The serial number had been scratched off of the firearm used in [case No. 24-CF-640]." The State referred the court to *People v. Hurley*, 2024 IL App (4th) 240073-U, ¶ 26, where the court upheld the denial of pretrial release for a defendant who was a three-time convicted felon and was charged with having a gun and machete in his backpack while committing retail theft and resisting a police officer. Here, the State argued, defendant is a four-time felon facing more serious charges than those in *Hurley*, and his release on EHM would not protect the community because it would not prevent him from obtaining a weapon.

¶ 10 Defense counsel noted that defendant had lived in Kane County his entire life (31 years), had significant ties to the community, and could attend court in person or by Zoom, which he had been doing in case No. 22-CF-610. Further, defendant had a fulltime job as a forklift driver and had been working approximately 50 hours per week for one year. Defendant's income supported his two children, ages six and seven, and would support two more children due in July and December. Defendant visited his two older children every weekend, in an arrangement that is not court ordered. Counsel asked the court to take judicial notice of the court orders in case No. 22-CF-610, reflecting that defendant had not missed any of his court dates since his release on January 4, 2023. Counsel noted that other people reside in the same residence as defendant, including his brothers and two friends.

¶ 11 Defense counsel also argued that there was insufficient evidence to establish defendant's involvement with the charged offenses. Specifically, counsel argued that sufficient time had

passed from the June 2023 incident, such that the State should have produced the alleged video recording his involvement in the weapons transaction. Further, counsel argued that an officer saw a "male" throw the firearm out the door, not, specifically, defendant, and that the witness who claimed that defendant did so was biased because she was the mother of the only other male in the residence. Defense counsel also disagreed that defendant posed a real and present threat to the community because, for example, the event in case No. 24-CF-640 occurred "months ago" and, if the State believed him a threat, it would have taken him into custody at that time. Further, in case No. 24-CF-642, counsel conceded that someone who threw a loaded firearm out of the residence might be a threat to public safety, but the State had not sufficiently established that defendant was that person. Counsel noted that, although defendant had served time in prison, much of his criminal history concerned substances and was nonviolent in nature. Defense counsel asked the court to deny the petition and release defendant on EHM with "heavy" restrictions, restricting him to the home "at pretty much all hours" and imposing home visits from pretrial services. Counsel noted that defendant had established that he could comply with conditions, in that he was released from custody in January 2023, but had continued to appear at all court dates, was on maximum pretrial conditions in that case, and there had been no noncompliance reports filed by pretrial services.

¶ 12 The court granted the State's petitions. The court found, based on the verified petitions and proffered evidence, that the State proved by clear and convincing evidence that the proof was evident and presumption great that defendant committed the charged offenses.

¶ 13 Further, the court found that the State proved by clear and convincing evidence that defendant posed a real and present threat to the safety of the community. It noted that it had considered all factors in section 110-6.1(g) of the Code, as amended, for assessing dangerousness.

It found that defendant was already on bond for very similar offenses in case No. 22-CF-610, when he engaged in new weapons offenses involving multiple people. Both pending cases, the court found, involved loaded weapons. Further, in case No. 24-CF-640, a couple of people were involved in a transaction with defendant to obtain a loaded firearm in a vehicle and, during that transaction, defendant explained how he had previously used a weapon to shoot at other people on the street in an unrelated incident. The court found it "disturbing" that defendant discussed that incident while transferring another firearm with a defaced serial number. Further, defendant explained during that transfer details regarding how to utilize the weapon and its "kick," which reflected to the court that defendant was "intimately familiar with guns and wanting to freely disseminate or distribute guns to those who are interested in purchasing those types or getting ahold of those type of weapons. But that was very disturbing to the court." In addition, in case No. 24-CF-642, the officer saw a gun being thrown out of the back of the house and the weapon was fully loaded. "And not only that, at the time that gun was thrown out of the house, [defendant's] girlfriend and some other little individual was in the house, which is very concerning to the court at this point in time." The court reiterated that defendant was out on bond when he allegedly committed these offenses and posed a real and present threat to the safety of others, based on the synopsis, circumstances, and his total disregard for the fact that he was on bond when committing these acts.

¶ 14 Similarly, the court did not find that there were any less-restrictive conditions or combination of conditions that could mitigate the real and present threat posed by defendant. The court disagreed with defendant that EHM and home visits were sufficient, because the facts of these cases reflected that defendant could access guns at any time. Further, the fact that defendant was already on bond for very similar offenses was "very concerning" to the court, and it did not

believe that less-restrictive conditions would be effective. In its written order, the court further explained its findings and noted that less-restrictive conditions would not suffice because, given that defendant was already on bond for similar offenses, the court found that he would seek to possess loaded firearms whenever possible, regardless of whether he was under a court order not to possess firearms.

¶ 15   On April 1, 2024, defendant filed notices of appeal in both cases, using the form notice promulgated under Illinois Supreme Court Rule 606(d) (eff. Oct. 19, 2023). The Office of the State Appellate Defender declined to file memoranda pursuant to Illinois Supreme Court Rule 604(h)(7) (eff. Apr. 15, 2024), and defendant stands on his notices of appeal. The State submitted memoranda opposing defendant's appeals. On June 26, 2024, this court consolidated the appeals for decision.

¶ 16                                     II. ANALYSIS

¶ 17   Pretrial release is governed by article 110 of the Code, as amended by the Act. 725 ILCS 5/110 (West 2022). Under the Code, as amended, all persons charged with an offense are eligible for pretrial release, and a defendant's pretrial release may only be denied in certain statutorily limited situations. *Id.* §§ 110-2(a), 110-6.1(e). As relevant here, upon filing a verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a detainable offense (*id.* § 110-6.1(e)(1)), that the defendant's pretrial release poses a real and present threat to the safety of any person or the community (*id.* § 110-6.1(e)(2)), and that no condition or combination of conditions can mitigate that risk (*id.* § 110-6.1(e)(3)). "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth

of the proposition in question." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74.

¶ 18     We review defendant's arguments under a bifurcated standard of review: the court's factual determinations are reviewed to determine whether they are against the manifest weight of the evidence, and the court's ultimate determination regarding denial of pretrial release is reviewed for an abuse of discretion. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13.   An abuse of discretion occurs when the court's decision is unreasonable. *Id.*   Likewise, a decision is against the manifest weight of the evidence where the court's determination is unreasonable. *Id*.

¶ 19     In his notices of appeal, defendant checked boxes raising three overarching challenges to the court's detention decision, with written elaboration accompanying each section.   We address each in turn.

¶ 20     First, defendant argues that the State failed to meet its burden of proving that he committed the charged offenses.   Defendant elaborates that, with respect to case No. 24-CF-640, the event happened in June 2023, and the State had sufficient time to obtain and produce the video allegedly demonstrating his alleged involvement.   As such, defendant argues, the State's proffered sworn police synopsis was insufficient.   Further, defendant argues that the State did not prove, via a LEADS report or certified convictions, that he has more than two convictions for forcible felonies "listed in the statute," nor did the confidential source identify defendant.   With respect to case No. 24-CF-642, defendant argues that, where: the police did not see defendant throw the firearm out the door and acknowledged another male was in the residence; the witness who told police that defendant threw it out the door was biased; and defendant's comment during his interview could have been prompted by hearing other people's conversations, the police synopsis alone was not enough to satisfy the State's burden.   Defendant argues that the State did not present "enough

evidence" of defendant's criminal history to "prove" the charge of armed habitual criminal. For the following reasons, we disagree.

¶ 21 Preliminarily, defendant did not below challenge or in any way dispute the State's proffer regarding his criminal history, and, so, to the extent he now argues that the State did not prove all that is required by the armed habitual criminal statute, that argument is forfeited. See, *e.g.*, *People v. Inman*, 2023 IL App (4th) 230864, ¶ 13; *People v. Washington*, 2024 IL App (2d) 230598-U, ¶ 10. In any event, even if not forfeited, armed habitual criminal was not the only detainable offense with which defendant was charged and, thus, defendant's argument would not implicate the court's detention decision. Moreover, the quantum of evidence required to detain a defendant pending trial is less than what is required at trial to prove guilt beyond a reasonable doubt (see 725 ILCS 5/110-6.1(f)(2), (f)(4), (f)(5)) (West 2022)), the Code expressly provides that the State may satisfy its burden of persuasion by presenting evidence "at the hearing by way of proffer based on reliable information" (*id.* § 110-6.1(f)(2)), and this court has repeatedly held that a police synopsis *alone* may be sufficient to sustain the State's burden. See *People v. Gomez*, 2024 IL App (2d) 240082-U, ¶ 16 (citing *People v. Mancilla*, 2024 IL App (2d) 230505, ¶ 24; *People v. Horne*, 2023 IL App (2d) 230382, ¶ 24). Thus, where the sworn police synopsis reflected that, when defendant committed these offenses, he was already out on bond for armed habitual criminal (as well as aggravated discharge of a firearm, unlawful possession of a weapon by a felon, unlawful possession of a firearm by a gang member, and aggravated unlawful use of a weapon), the court did not err in finding that the State sufficiently met its burden of proof that defendant had committed the offense of armed habitual criminal, based on both present and past convictions. For the same reasons, we reject defendant's challenge to the State's failure to produce a video, as the synopsis alone remained sufficient to satisfy its burden. Finally, defendant's challenges about

the synopses specifics regarding identification and/or a biased witness really attack the court's determinations on credibility and weight to give the evidence, as the court heard and rejected those arguments below. "We will not substitute our own judgment for the trier of fact on issues regarding the weight of the evidence or the credibility of witnesses." *People v. Vega*, 2018 IL App (1st) 160619, ¶ 44; see also *Inman*, 2023 IL App (4th) 230864, ¶ 11 (applying *Vega* in a pretrial-release context). In sum, the court's finding that the State met its burden of proving by clear and convincing evidence that the proof is evident or the presumption great that defendant committed the charged offenses was not against the manifest weight of the evidence.

¶ 22   Next, defendant argues that the State failed to meet its burden to establish that he poses a real and present threat to the community. He elaborates that, with respect to case No. 24-CF-640, the State clearly did not think he was a real and present threat to the community because the incident occurred in June 2023, yet he was not arrested at that time. With respect to case No. 24-CF-642, he notes that he was not alleged to have used the gun or threatened anyone with it. And, for both cases, defendant disagrees that they are like *Hurley*, because the defendant in *Hurley* was trying to physically harm the police, and, further, that the court's decision there that the detention order was not "unreasonable, arbitrary, or fanciful" is different than saying that the court would have reached the same conclusion. Finally, he notes that much of his criminal history is nonviolent, and that he is presumed innocent of all pending matters.

¶ 23   We reject defendant's arguments. Again, the court's findings were not unreasonable. It expressly considered the factors laid out in section 110-6.1(g) for assessing dangerousness, and it rendered detailed findings about how defendant's criminal history, actions involving loaded weapons around multiple persons, including in a vehicle and around a child, and his complete disregard for the fact that he was already on probation for similar conduct, reflected dangerousness.

The record also reflects that defendant was a known member of a street gang, has previous weapons offenses, and discussed with the confidential source his use of a weapon to shoot at individuals in another incident.

¶ 24    Moreover, that defendant was not immediately arrested for the June 2023 incident does not in any way reflect that the State did not find him a danger to the community; rather, there are a myriad of reasons why his arrest might have been delayed, particularly in an incident involving a joint operation with ATF, and we will not speculate as to those reasons.   Finally, defendant's attempts to distinguish *Hurley* do not impact our decision, as the fact that defendant here, unlike the defendant in *Hurley*, did not attempt to harm the police or resist arrest does not mean that the court's finding of dangerousness was unreasonable.   Indeed, the court in *Hurley* upheld the dangerousness finding even where that defendant lacked any prior weapons convictions, whereas that is simply not the case with defendant here.   Again, our review requires us to consider whether the court's decision was unreasonable, which it was not.    Here, for the reasons summarized above, the court's finding that defendant posed a real and present threat to the community was not against the manifest weight of the evidence.

¶ 25    Finally, defendant argues that the State failed to meet its burden of proving that no condition or combination of conditions could mitigate against any threat he posed to the community.   For both cases, he elaborates that the State did not prove that EHM and home visits from court services would be inappropriate.   He states that he has never been given the chance to participate in EHM, and there is no reason to believe that he can obtain weapons without leaving his home.   Further, defendant notes that there are also other people in the residence who can hold him accountable, and that he has been complying with court orders and attendance in case No. 22-

CF-610, where he is also on maximum pretrial supervision and there have been no noncompliance reports.

¶ 26    We disagree.   Preliminarily, defendant's 2013 escape charge concerned escape from EHM, a fact he did not challenge below, and, so, his statement that he has never been given the chance to participate in EHM is factually inaccurate.   Indeed, we cannot find unreasonable the court's decision to find EHM insufficient where defendant failed to comply with EHM in the past and was sentenced to two years' imprisonment for that act.   Moreover, and as repeatedly noted by the trial court, when he allegedly committed these offenses, defendant was out on bond for similar offenses, a condition of which is that he not commit other crimes.   In short, where the record reflects that defendant failed to comply with court-imposed conditions, the court's finding that no less-restrictive conditions would be appropriate was not against the manifest weight of the evidence.    See *People v. Bueno*, 2024 IL App (2d) 240053, ¶ 14 (citing *People v. Lee*, 2024 IL App (1st) 232137, ¶ 33 (where the defendant was on parole from a gun case and failed to comply with the conditions placed upon him, this "demonstrated history of refusing to abide by conditions of release" satisfied the State's burden of showing no less restrictive conditions were appropriate and the trial court did no err in so finding); *People v. Davis*, 2023 IL App (1st) 231856, ¶¶ 31-32 (State's burden of showing no less restrictive conditions were appropriate was satisfied, where the defendant's history, including a prior conviction for escape from law enforcement, demonstrated an unwillingness to follow rules and that he would not likely follow the court's order, rendering futile a release with conditions).   Finally, we note that we do not find compelling defendant's suggestion that other people in his household could hold him "accountable," where he has repeatedly thwarted efforts by the *court* to hold him accountable in other cases.

¶ 27    In sum, the court did not abuse its discretion in granting the State's petitions to deny defendant pretrial release.

¶ 28                                         III. CONCLUSION

¶ 29    For the foregoing reasons, the judgments of the circuit court of Kane County are affirmed.

¶ 30    Affirmed.