2023 IL App (1st) 231856

No. 1-23-1856B

Opinion filed December 18, 2023

Third Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23 MC 1110425 |
| | ) | |
| DEON DAVIS, | ) | Honorable |
| | ) | Charles Beach, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE VAN TINE delivered the judgment of the court, with opinion.
Presiding Justice Reyes and Justice D.B. Walker concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Deon Davis, appeals the trial court's October 9, 2023, order granting the State's

petition for pretrial detention pursuant to section 110-2 of the Code of Criminal Procedure of 1963

(Code) (725 ILCS 5/110-2 (West 2022)), which was significantly amended by Public Act 101-652

(eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act). See Pub. Act 102-1104,

§ 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248,

¶ 52 (lifting stay and setting effective date as September 18, 2023).

¶ 2    Defendant argues that (1) the State did not establish by clear and convincing evidence that

the proof was evident and the presumption great that he committed unlawful use of a weapon by a

felon (UUWF) (720 ILCS 5/24-1.1(a) (West 2022)), (2) the State failed to prove that he posed a real and present threat to the safety of the community, (3) the State failed to prove and the trial court erred in finding that no conditions of pretrial release would mitigate the threat he poses, (4) the trial court's written order contains an inaccurate description of defendant's criminal background, and (5) the State failed to produce his criminal history prior to the detention hearing. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      Defendant was arrested on October 8, 2023, and charged with Class 3 felony UUWF (*id.*). The public safety assessment provided by Pretrial Services indicated that defendant had prior felony and misdemeanor convictions (two of which were for violent crimes), a prior failure to appear (which was older than two years), and a prior incarceration.[1] However, it did not include a "new violent criminal activity flag." The assessment scored defendant 5 out of 6 under the "new criminal activity" factor, and 4 out of 6 under the "failure to appear" factor. Pretrial services recommended electronic monitoring "IF Released."

¶ 5      At defendant's initial appearance on October 9, 2023, the State filed a petition for pretrial detention pursuant to section 110-6.1 of the Code (725 ILCS 5/110-6.1 (West 2022)). The State alleged (1) that defendant was charged with an eligible offense, UUWF (*id.* § 110-6.1(a)(6)(O)), (2) that his release would pose a real and present threat to the safety of the community (*id.* § 110-6.1(a)(1)), and (3) that no conditions or combination of conditions could mitigate that risk (*id.* § 110-10(b)).

---

[1]The public safety assessment provides the court with background information relevant to the consideration of pretrial release for defendants charged with felonies. See 725 ILCS 185/1 (West 2022).

¶ 6     According to the State's proffer, on October 8, 2023, police stopped a car in which defendant was the sole rear seat passenger. Police saw defendant reach toward the floorboard behind the driver's seat and smelled a strong odor of cannabis emanating from the car. They also observed an open can of alcohol. The officers ordered defendant and two other individuals to exit the car. Near the area that defendant was seen reaching towards, an officer found a bag which contained a 9-millimeter, semiautomatic "ghost gun" with an extended magazine.[2] Defendant told police that he did not have a valid Firearm Owners Identification card (see 430 ILCS 65/0.01 *et seq.* (West 2022)) or a concealed carry license (see 430 ILCS 66/1 *et seq.* (West 2022)).

¶ 7     The State further proffered that defendant had been convicted of misdemeanor child endangerment in 2019, felony aggravated battery of a Chicago Transit Authority (CTA) employee in 2016, and "escape" in 2005. The State argued that defendant posed a real and present threat to the safety of the community based on the UUWF charge, the officers' recovery of a "ghost gun" with an extended magazine, and defendant's criminal history.

¶ 8     Defendant challenged the evidence that he possessed the firearm, arguing that the arresting officers reported seeing both defendant and another passenger reaching for bags on the floorboard. Defendant also argued that the State failed to establish that he posed a threat to the community, noting that he did not use the firearm and there was no victim in this case. Defendant argued that his prior convictions were more than seven years old, and his 2005 escape conviction was

---

[2]According to the Bureau of Alcohol, Tobacco, Firearms and Explosives, "ghost guns" are homemade firearms without serial numbers, making them difficult for police to trace. Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. 24,652 (Apr. 26, 2022) (to be codified at 27 C.F.R. pts. 447, 478, and 479).

nonviolent. Defendant proffered that he completed tenth grade and cared for his three children, with a fourth on the way. He requested pretrial release with a curfew or electronic monitoring.

¶ 9     At the conclusion of argument, the trial court explained the purpose of the detention hearing and summarized the State's burdens of proof under the Code. The court reviewed the presented facts, found probable cause (see 725 ILCS 5/110-6.1(b) (West 2022)), and made specific findings as to each of the State's burdens of proof. First, the court found that "the proof is evident and the presumption is great that the State has met their burden that [defendant] was in possession of that ghost gun" because officers saw defendant reaching toward the bag containing the ghost gun, which was "in his vicinity and within his control." Next, the court found that the defendant posed a real and present threat to the safety of the community because the current offense and defendant's aggravated battery conviction from 2016 are both violent crimes. The court explained that ghost guns are used "to avoid surveillance" and designed to be untraceable. It found that possessing an untraceable weapon is inherently dangerous and the extended magazine "makes it even more dangerous to the community." The trial court then held that no conditions or combination of conditions would mitigate the threat defendant posed to the community, based on defendant's 2005 conviction for escape from a law enforcement officer. The court held that "[t]he escape from a law enforcement officer tells me that you are not likely to follow the commands of the court" and ordered defendant's detention.

¶ 10    Defendant timely appealed. On appeal, defendant argues that the State failed to prove by clear and convincing evidence that (1) the proof is evident or the presumption great that he committed the charged offense, (2) he posed a real and present threat to the safety of the community, based on the specific, articulable facts of the case; (3) no condition or combination of

conditions provided in the Code would mitigate that threat. Defendant also contends that the court erred by (4) failing to consider less restrictive conditions provided in the Code that would mitigate the threat defendant posed, and (5) improperly considering his criminal history when the State had failed to tender copies thereof prior to the detention hearing, as required by section 110-6.1(f)(1) of the Code (*id.* § 110-6.1(f)(1)). This court has jurisdiction over defendant's appeal pursuant to Illinois Supreme Court Rule 604(h)(1)(iii) (eff. Sept. 18, 2023) because defendant complied with Illinois Supreme Court Rule 604(h)(2) (eff. Sept. 18, 2023).

¶ 11                                  II. ANALYSIS

¶ 12    The Act overhauled the pretrial release procedures in the Code by abolishing monetary bail under the presumption that all defendants are presumed eligible for pretrial release subject to conditions that the trial court deems appropriate, such as electronic monitoring or home supervision. See *Rowe*, 2023 IL 129248, ¶¶ 5, 52; see also 725 ILCS 5/110-1 *et seq.* (West 2022). However, the State may petition the trial court for pretrial detention in certain statutorily limited situations. 725 ILCS 5/110-6.1(a) (West 2022).

¶ 13    Upon filing a timely, verified petition, the State has the burden to prove by clear and convincing evidence that (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense, (2) the defendant's pretrial release poses a real and present threat to the safety of the community, and (3) that less restrictive conditions would not avoid that threat. *Id.* § 110-6.1(d), (e). If the trial court determines that the defendant should be denied pretrial release, the court is required to make written findings summarizing the reasons for denying pretrial release. *Id.* § 110-6.1(h).

¶ 14   The Code provides a nonexclusive list of factors the court may consider in determining whether a defendant is dangerous, including (1) the nature and circumstances of the offense charged and whether it is a violent crime (*id.* § 110-6.1(g)(1)); (2) the defendant's prior criminal history indicative of violent behavior (*id.* § 110-6.1(g)(2)(A)); (3) whether the defendant possesses or has access to weapons (*id.* § 110-6.1(g)(7)); (4) the weight of evidence against the defendant (*id.* § 110-5(a)(2)); and (5) the nature and seriousness of the threat defendant's release would pose to the safety of the community (*id.* § 110-5(a)(4)). No single factor is dispositive. *Id.* § 110-6.1(f)(7).

¶ 15                              A. Standard of Review

¶ 16   Prior to the amendments made by the Act, we reviewed bail appeals under Illinois Supreme Court Rule 604(c)(1) (eff. July 1, 2017) using an abuse of discretion standard. See *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9. An abuse of discretion occurs when the trial court's decision is arbitrary, fanciful, or unreasonable, or when no reasonable person would agree with the position adopted by the trial court. *Id.* In considering the trial court's decision to deny bail, the reviewing court will not substitute its judgment for the trial courts merely because it would have balanced the facts differently. *Id.* ¶ 15.

¶ 17   Although the Code, as amended by the Act, itself does not set out a standard of review, this court has applied the abuse of discretion standard pursuant to it. See *People v. Whitmore*, 2023 IL App (1st) 231807, ¶ 18. The Fourth District has also reviewed cases under the Code, as amended by the Act, for an abuse of discretion. See *People v. Inman*, 2023 IL App (4th) 230864, ¶ 11. On the other hand, the Fifth District has applied the manifest weight of the evidence standard in reviewing the trial court's finding on whether the State has met its burden of proof and reviewed

the trial court's determination decision regarding pretrial release for an abuse of discretion. *People v. Vingara*, 2023 IL App (5th) 230698, ¶ 10. The parties before us do not dispute that the applicable standard of review is abuse of discretion. We agree and we continue to apply it.

¶ 18                                    B. Pretrial Detention

¶ 19    We now consider defendant's challenges to the merits of the trial court's detention ruling. We address each argument in turn.

¶ 20                                    1. Commission of UUWF

¶ 21    Defendant first argues that the State failed to prove by clear and convincing evidence that he committed UUWF because there was no indication that he possessed the firearm.

¶ 22    Possession of a firearm may be actual or constructive. *People v. Givens*, 237 Ill. 2d 311, 335 (2010). A person has actual possession when he has immediate and exclusive control over an item; actual possession does not require "present personal touching" of that item. *Id.* A person has constructive possession when he lacks actual possession but has the intent and capability to exercise control over the item. *People v. Spencer*, 2016 IL App (1st) 151254, ¶ 25.

¶ 23    According to the police reports, defendant was the only person seated in the rear of the car and multiple officers saw him reach toward the floorboard in the rear driver-side seat of the car. Immediately thereafter, police recovered a firearm in a bag from the area where they saw defendant reaching. It appears that no other objects were nearby. These facts support a reasonable inference that defendant knew that the bag contained the firearm in his possession and exercised control of it. The State did not need to introduce proof that defendant actually touched the firearm, owned the firearm, or was the only person who could have possessed the firearm to show constructive possession and control. See *id.*

¶ 24    Defendant argues that the only evidence of possession was defendant's proximity to the bag containing the firearm, which, under federal Seventh Circuit caselaw, is not sufficient to establish possession. However, we are not bound to follow the decisions of federal courts other than the United States Supreme Court. *People v. Leavitt*, 2014 IL App (1st) 121323, ¶ 48. Moreover, defendant's possession of the firearm was not based on proximity alone. Rather, it was based on proximity *plus* movement toward the bag containing the firearm. Illinois courts have affirmed proof of possession based on a police officer's testimony that he saw the defendant reach for an object, the defendant was immediately apprehended in that area, and the object turned out to be an illegal firearm. See, *e.g.*, *People v. Brown*, 309 Ill. App. 3d 599, 609 (1999). Accordingly, the court did not abuse its discretion in finding that the proof was evident and the presumption great that defendant committed UUWF.

¶ 25                                2. Threat to the Community

¶ 26    Defendant next argues that the State failed to prove he posed a threat to the community. As noted before, the Code provides a list of factors the court may consider in determining whether a defendant is dangerous, including (1) the nature and circumstances of the offense charged and whether it is a violent crime (725 ILCS 5/110-6.1(g)(1) (West 2022)), (2) whether the defendant's prior criminal history is indicative of violent behavior (*id.* § 110-6.1(g)(2)(A)), (3) whether the defendant possesses or has access to weapons (*id.* § 110-6.1(g)(7)), (4) the weight of evidence against the defendant (*id.* § 110-5(a)(2)), and (5) the nature and seriousness of the threat defendant's release would pose to the safety of the community (*id.* § 110-5(a)(4)). No factor is dispositive. *Id.* § 110-6.1(f)(7).

¶ 27 The trial court's finding that defendant posed a threat to the community was not an abuse of discretion. Contrary to defendant's contention, the trial court found the State met its burden based on several factors to determine dangerousness. See *id.* § 110-6.1(g). The court noted the offense charged is possession of a ghost gun by a felon (see *id.* § 110-6.1(g)(1), (7)) and that defendant's criminal history includes violent offenses (see *id.* § 110-6.1(g)(2)(A)). The legislature has a stated purpose in being able to easily identify people prohibited from possessing a firearm so as "to promote and protect the health, safety and welfare of the public." 430 ILCS 65/1 (West 2022). Ghost guns are designed to avoid surveillance and avoid notice by law enforcement. They are also difficult for police to trace, to prevent any use of the gun from being linked back to the user. See Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. 24,652 (Apr. 26, 2022) (to be codified at 27 C.F.R. pts. 447, 478, and 479).

¶ 28 Defendant is a felon convicted of a violent offense. Convicted felons may not possess firearms. See 720 ILCS 5/24-1.1 (West 2022). His possession of a ghost gun goes directly against the legislature's stated purpose of promoting and protecting the safety of the public from the unlawful possession of firearms by certain individuals. See 430 ILCS 65/1 (West 2022).

¶ 29 Defendant argues that the State provided no facts to show dangerousness. He further argues that the State improperly concluded that he posed a threat based solely on his status as a convicted felon who was merely in proximity to the weapon. However, as stated above, defendant was not "merely in proximity" to the weapon. He had constructive possession of the gun and was capable of exercising control over it. *Spencer*, 2016 IL App (1st) 151254, ¶ 25. Defendant overlooks the significance that the weapon is a ghost gun. We are hard pressed to come up with a benign reason for a felon to possess an untraceable firearm that was designed to avoid surveillance. As the trial

court correctly noted, "Why would one possess a weapon which is designed to be untraceable?" Not only did defendant violate the law by possessing a firearm, but he did so with a firearm that was designed to circumvent the law in such a way that its use could not be traced back to him. Defendant further claims his prior convictions are too old to be relevant in assessing his current level of dangerousness. However, he does not present any legal argument or authority in support of this contention. The trial court did not abuse its discretion in finding the State proved defendant posed a real and present threat to the safety of the community.

¶ 30                         3. Conditions of Pretrial Release

¶ 31    Defendant contends that the State failed to prove that no conditions of pretrial release would mitigate the threat he poses to the community. He also contends that the trial court failed to consider less restrictive conditions that could have minimized any threat he posed to the community. Because defendant provides essentially the same argument for both claims, we address them concurrently. The Code requires the court to consider potential conditions for release "on the basis of available information." 725 ILCS 5/110-5(a) (West 2022). Conditions of pretrial release may include restrictions on out-of-state travel, reporting requirements, restraining orders as to certain people or places, home supervision with or without electronic monitoring, and "other reasonable conditions" as the least restrictive means to ensure compliance with the law. *Id.* § 110-10(b). Due to the nature of the threat defendant poses to the safety of the community as explained above, none of those conditions are mitigating. Ghost guns are used to avoid compliance with the rules. The public safety assessment scored defendant 5 out of 6 in terms of "new criminal activity." As the trial court noted, defendant's prior conviction for escape from law enforcement means he would be unlikely to follow the court's commands. Defendant's history showed an unwillingness

to follow the rules set out by law enforcement authorities, including the CTA and police. Based on the proffered facts, the trial court did not abuse its discretion in concluding that defendant presented a threat to the community that no conditions of pretrial release could mitigate.

¶ 32    Defendant claims the court could have required that he merely "[r]efrain from possessing a firearm" pursuant to section 110-10(b)(2) of the Code (*id.* § 110-10(b)(2)), because he was not charged with any violent acts. However, such a condition would be futile, given that defendant is already accused of violating the law that prohibits felons from possessing firearms. Defendant also cites the Code's listed factors and contends that they weigh in favor of his conditional release. Specifically, he claims that he did not currently commit any violent acts, that the presence of a firearm alone does not preclude his release, and the State does not allege that he would obstruct the judicial process if released. The plain language of the Code requires that trial judges make individualized determinations based on a weighing of all of the relevant factors. *Id.* § 110-6.1(f)(7) ("Decisions regarding release, conditions of release, and detention prior to trial must be individualized, and no single factor or standard may be used exclusively to order detention."). Nothing in the Code allows us to reweigh the factors at play. We will not substitute our judgment for that of the trial court. See *Simmons*, 2019 IL App (1st) 191253, ¶ 15.

¶ 33                             4. Incorrect Written Ruling

¶ 34    Defendant next argues the court written order incorrectly states that "D has a prior escape from electronic monitoring," when the conviction was for an escape from a law enforcement officer. To the extent defendant suggests that his detention was based on the trial court's incorrect understanding of his criminal background, the court's oral ruling indicates that is not the case. At the hearing, the court specifically asked if defendant's escape charge was from electronic

monitoring and the State clarified that it was "an escape of a police officer." In its oral ruling, the court held

> "The escape from a law enforcement officer tells me that you are not likely to follow the commands of the court. There aren't any conditions that I can impose that would be— restrict you in such a way that it would mitigate that real and present threat, so at this time, sir, you will be detained on this particular case."

"When the oral pronouncement of the court and the written order are in conflict, the oral pronouncement controls." (Internal quotation marks omitted.) *People v. Carlisle*, 2015 IL App (1st) 131144, ¶ 87.

¶ 35                                                    5. Plain Error

¶ 36     Defendant contends that the State failed to tender copies of his criminal history prior to the detention hearing, as required by section 110-6.1(f)(1) of the Code (725 ILCS 5/110-6.1(f)(1) (West 2022)). According to defendant, this failure prohibits the State from proffering defendant's criminal history and also precludes the court from considering his criminal history. Defendant acknowledges that he failed to raise this issue in the trial court, but he seeks to avoid forfeiture under the first prong of the plain-error doctrine by contending that the evidence was closely balanced and that he was prejudiced by the error. See *People v. Herron*, 215 Ill. 2d 167, 178 (2005) (first prong of the plain-error doctrine); Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967) (plain errors not raised in the trial court may be reviewed on appeal). He argues that the trial court erred in finding that no conditions could mitigate the threat defendant posed based solely on his escape conviction.

¶ 37     The threshold issue is whether the unpreserved error resulted from forfeiture, and is thus reviewable under the plain error doctrine, or whether defendant affirmatively waived review by

his acquiescence to the alleged error. See, *e.g.*, *Gallagher v. Lenart*, 226 Ill. 2d 208, 229 (2007) (waiver is the "intentional relinquishment of a known right," while forfeiture is the "failure to make the timely assertion of the right" (internal quotation marks omitted)).

¶ 38 Although defendant forfeits any errors not first raised in the trial court, we may review unpreserved plain errors where the evidence is close and the error affected defendant's substantial rights—namely, his liberty. See *Herron*, 215 Ill. 2d at 186-87. However, we need not consider whether plain error occurred when a defendant "acquiesce[s]" to the alleged error. *People v. Johnson*, 2019 IL App (1st) 161104, ¶ 29. A defendant that " 'acquiesces in the admission of evidence, even though the evidence is improper,' " may not claim on appeal that the trial court erred in the admission. *Id.* ¶ 26 (quoting *People v. Bush*, 214 Ill. 2d 318, 332 (2005)).

¶ 39 In other words, defendant's counsel may not stand mutely by, participate in the hearing without objection, and then complain of error on appeal. See *id.* ¶ 28. Counsel did not object to the State's proffer of defendant's criminal history at the beginning of the detention hearing. Counsel likewise failed to object at any of the multiple times the trial court mentioned defendant's criminal history in its ruling. Although the trial court did not ask whether the State tendered copies to the defendant, nothing prevented defense counsel from raising an objection at any of the multiple opportunities it had to do so. See, *e.g.*, *People v. Cox*, 2017 IL App (1st) 151536, ¶ 75 ("If the defense had objected at any point during trial, *** the State could have easily remedied the problem ***."). The proper time to object would have been at the hearing, to give the trial judge a chance to pass the case and allow the State to easily remedy the alleged problem. Based on the circumstances of this case, we find that defendant acquiesced to the State's proffer of his criminal history and affirmatively waived any claim of alleged error.

¶ 40    Assuming, *arguendo*, that defendant did not waive this argument, he still fails to explain how the trial court erred. Before plain-error review, there must first be an error. See *People v. Hood*, 2016 IL 118581, ¶ 18 ("without error, there can be no plain error" (internal quotation marks omitted)); *People v. Sargent*, 239 Ill. 2d 166, 189-90 (2010) (plain-error analysis begins with determining whether any error occurred). Defendant fails to point to any specific language in the Code that suggests the trial court is precluded from considering defendant's criminal history when the State fails to tender a copy of that history to defendant prior to the detention hearing. The most reliable indicator of the meaning of a statute is its language, given its plain and ordinary meaning. *Accettura v. Vacationland, Inc.*, 2019 IL 124285, ¶ 11. Had the legislature intended such a restriction, it would have included it in the language of the statute. Instead, the Code provides that evidence may be presented "by way of proffer based upon reliable information" (725 ILCS 5/110-6.1(f)(2) (West 2022)) and that "[t]he rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing" (*id.* § 110-6.1(f)(5)). Defendant does not claim the State proffered an inaccurate version of his criminal history or gave any indication the history is unreliable. See *id.* § 110-6.1(f)(2) ("The State *** may present evidence *** by way of proffer based upon reliable information."). He merely concludes, without any legal basis, that the court erred in considering such information.

¶ 41    Moreover, the State's alleged failure to furnish defendant with a copy of his criminal record before the hearing resulted in no prejudice where defendant's counsel demonstrated a proficient knowledge of his criminal history at his pretrial release hearing. Nothing in the record suggests that defendant's counsel was unaware of defendant's background or that the State failed to tender

it. Counsel competently argued for pretrial release based, in part, on the fact that his convictions occurred more than seven years ago and were not for sufficiently violent offenses.

¶ 42     For the foregoing reasons, we hold the trial court's grant of the State's petition for pretrial detention under the Code did not constitute an abuse of discretion. Defendant's argument that the court erroneously considered his criminal history is waived. We affirm the trial court's order of October 9, 2023.

¶ 43                                    III. CONCLUSION

¶ 44     For the foregoing reasons, we affirm the trial court's judgment.

¶ 45     Affirmed.

---

***People v. Davis*, 2023 IL App (1st) 231856**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 23-MC-1110425; the Hon. Charles Beach, Judge, presiding, |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Sharone R. Mitchell Jr., Public Defender, of Chicago (Tressa Palcheck and Jeffe Yang, Assistant Public Defenders, of counsel), for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Matthew Connors, and Shannon Berkey, Assistant State's Attorneys, of counsel), for the People. |

---