2024 IL App (1st) 241507-U
No. 1-24-1507B
Order filed October 21, 2024

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 24 CR 00556 01 |
| | ) | |
| JOHNATHAN VARGAS | ) | The Honorable |
| | ) | Charles P. Burns, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HYMAN delivered the judgment of the court.
Presiding Justice Tailor and Justice Gamrath concurred in the judgment.

**ORDER**

¶ 1     *Held*: Affirmed. Trial court did not abuse its discretion by finding continued detention would avoid the real and present threat defendant posed.

¶ 2     Trial courts will review, not redo, orders granting petitions to detain. Johnathan Vargas asked for review under article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), as amended by Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act. But in his written motion, Vargas sought a re-evaluation, arguing that the State had not carried its burden for his pretrial detention. We reject his contentions and affirm.

¶ 3                                Background

¶ 4    Johnathan Vargas asked for a "review [of] his detention." See 725 ILCS 5/110-6.1(i-5) (West 2022). Months earlier, the trial court had ordered him detained before trial. But Vargas was released from custody because of a later mistake by the Department of Corrections. He returned without arrest and argued that he had "obviously demonstrated he was not a flight risk," so should be on electronic home monitoring. The trial court disagreed, reasoning, in part, that Vargas still posed a real and present threat to the safety of others.

¶ 5    *Detention Hearing*

¶ 6    The State petitioned to detain Vargas, who was on mandatory supervised release for armed robbery, after his arrest for possessing a loaded gun. Vargas stood accused of being an armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2022)) among other crimes. The State proffered how officers flipped emergency lights after seeing a driver commit a traffic violation. Vargas slowed his car but did not stop. Officers saw him "shifting around" in the driver seat. Once he stopped, officers approached to ask for his driver's license, which he did not have. Officers smelled fresh and burnt cannabis, so they ordered Vargas and his passenger out. They patted Vargas down and found a loaded gun in his right pocket. Vargas admitted having no license to carry. He had prior felonies for aggravated unlawful use of a weapon, armed robbery, and escape and was on mandatory supervised release.

¶ 7    Pretrial Services recommended supervision, noting how Vargas scored three (out of six) for both his new-criminal-activity and failure-to-appear scores.

¶ 8    Vargas proffered how he was 25 years old, a lifelong Chicago resident, and employed full-time as a chef. He graduated high school and lived with his family.

¶ 9    The trial court found the State carried its burden under the Code, ordering Vargas detained. First, the proof was evident, and the presumption was great, that he committed the detainable offense of being an armed habitual criminal. Second, he posed a real and present threat to others because, despite the prior weapon offense and a violent felony, he had a loaded gun in his pocket while in a "densely [] populated area." Third, no condition or combination of conditions would mitigate the risk because he had proven himself incapable of complying with mandatory supervised release and had once committed the felony of escape.

¶ 10    The trial court admonished Vargas of his appellate rights under the version of Supreme Court Rule 604(h) then in effect. Vargas did not file a notice of appeal.

¶ 11                     *Supreme Court Rule 604(h)*

¶ 12    Several months after the detention hearing, the Illinois Supreme Court amended Rule 604(h) to require a written motion as a "prerequisite to appeal" and permit the filing of a notice of appeal "at any time prior to conviction." Ill. S. Ct. R. 604(h)(2), (3) (eff. Apr. 15, 2024).

¶ 13                     *Review of Detention Order*

¶ 14    After Rule 604(h)'s amendment, Vargas asked the trial court to "review his detention" because he returned to custody voluntarily even though the trial court had issued a warrant for his arrest. Along with these new facts, the parties repeated much of the proffer from the detention hearing. The trial court made similar findings and stressed: "While I do understand [Vargas's] argument * * *, there was really nothing else that is any different[.]" It admonished Vargas of his appellate rights under the version of Supreme Court Rule 604(h) that was no longer in effect.

¶ 15    About three weeks later, Vargas filed a written motion attacking the trial court's detention-review order. The trial court found like before: "I don't think there is anything that has changed

on this." The trial court again admonished Vargas of his appellate rights under the version of Supreme Court Rule 604(h) that was no longer in effect. Under the current version of Rule 604(h), Vargas timely filed a notice of appeal.

¶ 16                                                    Analysis

¶ 17    Vargas contends the State failed to prove (i) he presents a real and present risk to others' safety and (ii) no conditions other than pretrial detention could mitigate that risk or prevent his willful flight. He also argues the trial court erred by finding "no condition or combination of conditions would reasonably ensure [his] appearance * * * for later hearings or prevent [him] from being charged with a subsequent felony or Class A misdemeanor." We disagree.

¶ 18    Each of Vargas's contentions begins from the premise that his release from the Department of Corrections somehow reset the proceedings. He attacks the petition to detain as if the State filed it after his mistaken release, not several months earlier. See 725 ILCS 5/110-6.1(e) (West 2024) (defining burden for denying pretrial release). Likewise, he attacks the trial court's order as if it revoked his pretrial release, not affirmed his continued detention. See *id.* § 5/110-6(a) (defining proceedings for revoking pretrial release).

¶ 19    Vargas focuses on impertinent parts of the Code. The trial court did not abuse its discretion by ordering Vargas's continued detention. And, assuming we can review the original detention hearing, the trial court properly ordered Vargas detained.

¶ 20                                     *Review of Detention Order*

¶ 21    Section 110-6.1(i-5) vests in the trial court the power to release from custody those facing trial. *id.* § 5/110-6.1(i-5); see *People v. Thomas*, 2024 IL App (1st) 240479, ¶ 16 (finding absence of evidentiary burden under section 110-6.1(i-5) demonstrated legislative intent to give trial court

discretion about continued detention). Section 110-6.1(i-5) presumes that detention is necessary, as the trial court would have found once before. *Thomas*, 2024 IL App (1st) 240479, ¶ 14. It then asks whether anything has changed and detention is no longer needed. *Id.*

¶ 22   Under the Code, "[a]t each subsequent appearance * * *, the [trial court] must find that continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or to prevent the defendant's willful flight from prosecution." 725 ILCS 5/110-6.1(i-5) (West 2024). We review the trial court's ruling for an abuse of discretion. *Thomas*, 2024 IL App (1st) 240479, ¶ 14.

¶ 23   The trial court did not abuse its discretion by concluding that Vargas' continued detention was necessary to avoid a real and present threat to others' safety. At the detention hearing, the trial court had found he posed a real and present threat to others because, despite a prior weapon offense and a violent felony, he had a loaded gun in his pocket while in a "densely [] populated area." And, as the trial court noted when reviewing that decision months later, "nothing" had changed. True, Vargas surrendered before arrest. Still, it was reasonable to find his prior bad acts outweighed whatever mitigating value this recent lawful one had. See, *e.g.*, *People v. Davis*, 2023 IL App (1st) 231856, ¶ 25 (no abuse of discretion to find defendant with prior violent felonies presented threat to community when in constructive possession of ghost gun).

¶ 24                              *Detention Hearing*

¶ 25   Vargas offers no reason in his written motion why we should analyze his contentions under sections 110-6.1(e) and 110-6(a). Section 110-6.1(e) applies when the State petitions to detain and defines the burden for denying pretrial release. Section 110-6(a) applies when the State moves to revoke release and defines proceedings for revoking pretrial release. Neither fit this record:

Vargas's detention hearing occurred months before the hearing from which he appeals, and the State did not petition to revoke his release. In any event, Vargas's failure to explain why these sections should apply forfeits those points. Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024) ("[A]ny issue not raised in the motion for relief, other than errors occurring for the first time at the hearing on the motion for relief, shall be deemed waived.")

¶ 26     We can think of one reason we might analyze his contentions under section 110-6.1(e). Arguably, the amendment to Rule 604(h) permits this court to reach and review his detention hearing. *People v. Milner*, 2024 IL App (1st) 241284, ¶¶ 16-24 (discussing parties' contentions regarding this court's jurisdiction to review detention hearing under amended Rule 604(h)). That said, Vargas's written memo attacked not the detention order but the review of that order.

¶ 27     Even if we reviewed Vargas's detention hearing, we would affirm. See generally *People v. White*, 2024 IL App (1st) 232245, ¶ 22 (discussing unsettled question about standards of review). Cannabis, "a loaded gun, and a steering wheel are a menacing mix—a real and present threat— even before one adds in the law's prohibition on [defendant] possessing a firearm." *People v. Daniels*, 2024 IL App (1st) 240837-U, ¶ 16 (holding State carried burden under Code to prove threat). And Vargas's unwillingness to follow the rules of mandatory supervised release undermines his claim to conditions short of pretrial detention. See *Davis*, 2023 IL App (1st) 231856, ¶ 31 (no abuse of discretion to order detained defendant with prior conviction of escape); *People v. Young*, 2024 IL App (3d) 240046, ¶ 10 (manifest weight supported pretrial detention where defendant once violates mandatory supervised release by committing another offense).

¶ 28     Affirmed.