2025 IL App (1st) 241955-U

No. 1-24-1955B

First Division
January 8, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 22 CR 244901 |
| DERRICK HAWKINS, | ) ) ) | Honorable Kenneth J. Wadas |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE COBBS delivered the judgment of the court.
Justice Pucinski concurred in the judgment.
Presiding Justice Fitzgerald Smith specially concurred.

**ORDER**

¶ 1     *Held*:   We affirm the circuit court's order denying defendant-appellant's pretrial release, where the State met its burden in demonstrating that defendant posed a real and present danger to the community at large, and that there were no condition or conditions sufficient to mitigate defendant's threat.

¶ 2     In 2021, prior to the passage of major criminal law reform in Illinois, defendant-appellant,

Derrick Hawkins, was arrested and subsequently charged with violating various sections of the

Code of Criminal Procedure of 2012. Specifically, defendant was charged with: (1) two counts of armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2020)); (2) two counts of possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2020)); (3) two counts of felon possession of a firearm while on parole (720 ILCS 5/24-1.1(a) (West 2020)); (4) four counts of aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a)(1) (West 2020)); (5) one count of possession of a firearm with a defaced serial number (720 ILCS 5/24-5(b) (West 2020)); and (6) one count of resisting or obstructing a peace officer (720 ILCS 5/31-1(a-7) (West 2020)).[1] On February 2, 2022, a bond hearing was held and defendant was ordered detained without bail pending trial.[2]

¶ 3     Subsequently, the Illinois Legislature passed Public Act 101-652, commonly referred to as "the Safety, Accountability, Fairness, and Equity-Today (SAFE-T) Act" or the "Pretrial Fairness Act" (Act). See Pub. Acts 101-652, § 10-255 (eff. Jan. 1, 2023); 102-1104, § 70 (eff. Jan. 1, 2023); Ill. S. Ct. R. 604(h)(1) (eff. Oct. 19, 2023); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023).

¶ 4     On August 26, 2024, defendant filed a motion seeking his release from pretrial detention under the new legislation. On that same date, the State filed a verified petition for a pretrial detention hearing pursuant to articles 110-2 and 110-6.1 of the Code of Criminal Procedure of 1963 (Procedure Code) (725 ILCS 5/110-2, 110-6.1 (West 2020)). Following a hearing on the petition and defendant's motion, the circuit court granted the State's request. On September 11, 2024, defendant filed a motion for relief pursuant to Supreme Court Rule 604(h)(2) (eff. April 15, 2024). After hearing, the circuit court denied the motion.

---

[1]Although the actual indictment does not appear in the appellate record, the charges against defendant are reflected in the criminal disposition sheet contained therein.

[2]Occurrence of the bond hearing is referenced in defendant's motion for release.

¶ 5    Now, in this interlocutory appeal, defendant argues that the circuit court erred in ordering pretrial detention. Specifically, he challenges two elements of the State's petition, in that (1) he was not a clear and present danger, and (2) there were sufficient conditions to mitigate any threat he posed. For the reasons that follow, we affirm the circuit court's detention order.

¶ 6                                I. BACKGROUND

¶ 7            A. Original Detainment Proceedings and Defendant's Motion to Vacate

¶ 8    As noted, defendant was ordered detained before the Act's passage on February 2, 2022, following a bond hearing. The record is sparse regarding the details of defendant's arrest on February 1, 2022, and subsequent court proceedings, as it does not contain supporting documentation, such as the original arrest report or initial pretrial services assessment.[3]

¶ 9    On August 26, 2024, defendant filed a motion to vacate his existing detention order. Therein, defendant asserted that, under the new Act, the State was required to file a verified petition to continue to detain him under the new statutory framework.

¶ 10                        B. State's New Detention Petition

¶ 11    On August 26, 2024, the State filed its verified petition, which is the subject of this appeal. Therein, the State argued that defendant was eligible for pretrial detention because the charged offense of armed habitual criminal was a non-probationable felony pursuant to section 110-6.1(a)(1) of the Procedure Code (725 ILCS 5/110-6.1(a)(1) (West 2020)); (2) defendant posed a "real and present threat to the safety of any person or persons or the community;" and (3) there were "[n]o condition or combination of conditions set forth in [725 ILCS 5/110-10(b) (West 2020)] *** to mitigate that risk." With regard to the second element, the State asserted that:

_____

[3]See 725 ILCS 5/110-5(b) (West 2020) (when assessing propriety of release conditions, court may use a regularly validated risk assessment tool).

"The defendant, a convicted felon who was on parole, was in possession of two firearms on the public streets in Chicago. One of the firearms had a defaced serial number, and the second firearm was equipped with an extended magazine. The defendant has [five] prior felony convictions, two of which are unlawful possession of a weapon by a felon."

¶ 12                            D. New Pretrial Detention Hearing under the Act

¶ 13    On August 26, 2024, the State and defendant appeared before the circuit court on the State's petition and defendant's motion to vacate.

¶ 14                                    1. The State's Proffer

¶ 15    The State argued that the proof was evident and the presumption great that defendant had committed the eligible and non-probationable felony offense of armed habitual criminal. According to the State, on February 1, 2022, at approximately 12:19 p.m., Chicago Police Department officers conducted a traffic stop on a blue Audi at or around 1218 South Kostner Avenue in Chicago, Illinois. Defendant was not driving the Audi but was seated in the front passenger seat. Another individual was seated in the rear. Officers asked the driver for his driver's license, but the driver was not carrying it. The officers subsequently requested that all occupants exit the vehicle.

¶ 16    As the individuals exited, the officers observed a bulge in defendant's front right pants pocket. Officers proceeded to conduct a safety pat-down on him and felt what appeared to be the butt of a gun. Defendant then pushed the officers' hands away and attempted to flee. Officers attempted to conduct an emergency "takedown," but defendant resisted by stiffening his arms and pulling away. Eventually, the officers were able to place him into custody.

¶ 17    After placing him into custody, officers recovered a loaded "Kahr Arms 'CW' "[4] 40 millimeter firearm with a defaced serial number from defendant's front right pants pocket. Officers also located a second handgun in defendant's pant leg, specifically a loaded Taurus nine millimeter with an extended magazine and one round in the chamber. Finally, officers also recovered eight .40 caliber live rounds in defendant's jacket pocket. Officers also learned that defendant did not have a valid Firearm Owner's Identification (FOID) card or concealed carry license (CCL), and that he was a convicted felon.

¶ 18    Next, the State detailed defendant's prior criminal history. According to the State, at the time of arrest, defendant had five prior felony convictions. His most recent felony was a 2017 conviction for unlawful use of a weapon by a felon, for which he had served eight years at the Illinois Department of Corrections (IDOC). At the time of arrest, defendant had been on parole for that offense. Other prior convictions included: two separate convictions in 2015 for manufacturing and delivery with a three-year sentence at IDOC; a 2013 conviction for unlawful use of a weapon by a felon with a five-year sentence at IDOC; and a 2012 conviction for possession of a stolen motor vehicle with a five-year sentence at IDOC.

¶ 19    Finally, the State argued that there was no condition or combination of conditions that could mitigate the risk to the community, and reserved further argument.

¶ 20                    2. Defendant's Arguments in Support of Release and In Mitigation

¶ 21    Defense counsel challenged two elements of the State's petition. First, she rejected the State's position that defendant posed a threat to the public. Counsel observed that defendant's prior convictions had been nonviolent felony offenses, and that the detainable offense of armed habitual

---

[4]"CW" is given no meaning in the record.

criminal was also non-violent in nature. Defense counsel argued that, per recent appellate precedent, such as the case of "*People v. Martinez,*" the State had to show that defendant posed a risk to the community beyond his mere possession of a firearm.[5] Here, counsel noted, the State had provided no evidence that he had been threatening anyone at the time of arrest.

¶ 22    Next, defense counsel argued that, even if defendant was a real and present danger, the State had not met its burden in proving that conditions such as electronic monitoring were insufficient to protect the public and ensure defendant's presence at future court dates. According to counsel, the State had argued in unrelated cases that electronic monitoring bands could be removed by defendants, but here, the State had failed to proffer an individualized reason as to why defendant was more likely than others to attempt to cut off his bands or evade monitoring. Additionally, defense counsel contended that the State had shown nothing to indicate that defendant was a flight risk which would affect his presence at future court appearances or failure to face the consequences of "any cases that may arise."

¶ 23    Finally, in mitigation, defense counsel indicated that defendant had two children, one of which suffered from a heart defect, and that defendant had been regularly attending appointments for the child and wished to continue doing so.

¶ 24                                  3. State's Rebuttal

¶ 25    In reply, the State rejected defense counsel's characterization that defendant had merely possessed a weapon. Instead, the State pointed out, defendant had been found in possession of two guns, one of which was defaced, and the other with an extended magazine and additional live rounds. Further, the State continued, defendant had resisted arrest while having those two guns on

---

[5]No citation for *People v. Martinez* was provided in the record or during argument.

his person, thus creating a dangerous situation for himself and anyone else in the area. With regard to conditions, the State pointed out that defendant had already been subject to conditions at the time of arrest, as he had still been on parole for his last two offenses. The State also reasoned that electronic monitoring bands could be cut off, and the court would not be notified if defendant became in possession of another firearm.

¶ 26                                    4. Circuit Court's Ruling

¶ 27    The circuit court orally denied defendant's motion and granted the State's petition for continued detention. In so ruling, the court made the following determinations. First, the court found that the State had met its burden in establishing, by clear and convincing evidence, that defendant had committed the detainable offense of armed habitual criminal.

¶ 28    Second, the court found that defendant posed a real and present danger to the community based on the nature of the current charges and his past criminal history. The court observed that "there [was] a belief in society now in some aspects of the criminal justice system" that the alleged crime of unlawful possession of a firearm by a felon was not a violent crime by itself. Here, however, the court believed that defendant's actions "[took] it a step further," as he had been found with two guns, one of which having a defaced serial number, multiple rounds of ammunition, and an "inherently dangerous" extended magazine. The court reasoned that defendant was "not going to be hunting ducks with an extended magazine pistol," and that two guns were not needed for "defense" or "protection." The court also observed defendant's five prior felony convictions, one of which was for unlawful possession of a weapon by a felon, and noted that defendant "seemed to persist in wanting to carry weapons against the law whether he is on parole or not."

¶ 29    Last, the court found that there were no conditions that could mitigate defendant's threat. The court reasoned that it would be unlikely that defendant would comply with electronic

monitoring conditions, given that he had failed to do so with his more "stringent" parole conditions, and thus electronic monitoring was insufficient to ensure that he would not "pick up another case." The court concluded that the State's proffer "outweigh[ed] any balance from the defense on his likelihood of not committing another offense or not stripping the bands off while [being] on electronic monitoring."

¶ 30 The court's written ruling, memorialized that same day, substantively parroted its oral ruling.

¶ 31                               E. Defendant's Motion for Relief

¶ 32 On September 11, 2024, defendant filed a motion for relief pursuant to Supreme Court Rule 604(h)(2), which solely challenged the second and third elements of the State's petition.

¶ 33 As to the second element, defendant argued that the State had failed to prove that he posed a threat to the safety of any person, persons, or the community simply based on the number of weapons of which he had been found in possession. Although defendant conceded that he was charged with illegally possessing a firearm, he reiterated that there was "nothing inherently violent" or "more dangerous" about possessing two firearms instead of one. Defendant further argued that the State had failed to meet its burden in showing that defendant posed a risk of willful flight to avoid prosecution, as there was no evidence that defendant had failed to attend court hearings or flee from proceedings related to his past convictions.

¶ 34 Next, defendant argued that the State had failed to prove that there was no condition or combination of conditions that could mitigate any real and present threat. Defendant contended that the Act required that pretrial conditions of release or detention had to be individualized in nature, and that a generalized claim that electronic monitoring bands could be cut off to escape was insufficient for continued detainment. Defendant reiterated that the State had not shown

defendant's prior avoidance of court proceedings in his past cases. Additionally, defendant contended that the court had erred in determining that electronic monitoring would fail to address any concerns related to defendant's presence at future court hearings and prevent him from being charged with other criminal matters. Finally, defendant posited that home confinement was an appropriate alternative, where the court could order defendant to remain at home for seven days out of the week to ensure compliance.

¶ 35    On September 11, 2024, a hearing was held on defendant's motion. Both parties stood on their filings and previous arguments, and the court denied the motion. The court reiterated defendant's criminal history, including two past Class 2 felony convictions and at least two prior unlawful use of weapons cases, which demonstrated a "clear track record" of committing offenses involving firearms. The court also maintained that electronic monitoring was inappropriate because it would "not deter the defendant from picking up another case."

¶ 36    On September 18, 2024, defendant filed a notice of appeal.

¶ 37                                   II. ANALYSIS

¶ 38                              A. The Procedure Code

¶ 39    The Procedure Code now presumes that all persons charged with a qualifying offense shall be eligible for pretrial release prior to conviction. 725 ILCS 5/110-2(a), 5/110-6.1(e) (West 2020). Therefore, pretrial release may be denied *only* if a person is charged with a qualifying offense as delineated within section 110-6.1 of the Procedure Code and following the conducting of a corresponding hearing. *Id.* §§ 5/110-2; 5/110-6.1(e)-(f).

¶ 40    The Act also provides for reconsideration of pretrial detention for those detained prior to January 1, 2023, *i.e.* the initial effective date of the Act. See 725 ILCS 5/110-7.5 (West 2020). In particular, an individual who remains in pretrial detention and is eligible for continued detention

under the Procedure Code is entitled to a hearing determined by the type of charged offense. 725 ILCS 5/110-7.5(b)(1)-(3) (West 2020). In particular, for those charged with armed habitual criminal, the new hearing shall be held within 90 days of the defendant's motion for reconsideration of pretrial release conditions. *Id.* § 5/110-7.5(b)(1); *Id.* § 5/110-6.1(a)(1)-(7).

¶ 41    The State will also trigger the requirement for a pretrial detention hearing upon its timely filing of a verified petition for detainment. *Id.* § 5/110-6.1(a). The State must prove, by clear and convincing evidence, three elements in its petition: (1) that the "proof is evident or the presumption great" that the defendant has committed an eligible detainable offense  (*Id.* § 5/110-6.1(e), (e)(1)), (2) that a defendant "poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts [of their case]," (*Id.* § 5/110-6.1(a)(6), (e)(2)) and (3) that there is "no condition or combination of conditions set forth" within the Procedure Code that could mitigate that real and present threat to the safety of any person, persons, or the community, based on the facts of the case (*Id.* § 5/110-6.1(e)(3)).

¶ 42    Following the filing of either a petition for detainment or motion for reconsideration of detention, the circuit court must hold a hearing. See *id.* §§ 5/110-6.1(a), (c), (f); *Id.* § 5/110-7.5(b)(1). Each decision regarding pretrial release is individualized, and no single factor or standard is determinative. *Id.* § 5/110-6.1(f)(7). If the court determines that the State has met its burden on its petition, the court must make a written finding summarizing its reasons for pretrial detention. 725 ILCS 5/110-6.1(h).

¶ 43    Following the grant or denial of pretrial release, an appealing party must first file a motion for relief before the circuit court that requests the same relief that will eventually be sought on

appeal. Ill. S. Ct. R. 604(h)(2). Following the circuit court's review and denial of the motion, the party may appeal to the appellate court. Ill. S. Ct. R. 604(h)(1) (eff. April 15, 2024).[6]

¶ 44    With this framework in mind, we now turn to the merits of defendant's appeal.

¶ 45                                B. Standard of Review

¶ 46    Pursuant to Supreme Court Rule 604(h), defendant has chosen to have his motion for relief serve as his memorandum on appeal and has not further supplemented the motion. However, in doing so, defendant failed to articulate the relevant standard of review on his appeal. Additionally, the State does not advocate for a specific standard of review of the elements supporting detention, and instead asserts that various appellate districts have applied differing standards. However, throughout various parts of its brief, the State contends that it would prevail under either a manifest weight or abuse of discretion standard.

¶ 47    We agree with the State that the court's ruling would stand whether reviewed under either an abuse of discretion or a manifest weight analysis. That said, we again acknowledge the ongoing and unresolved debate among the appellate districts, and even among the divisions in the First District, concerning the appropriate standard of review applicable to the three statutory elements. See *People v. Parker*, 2024 IL App (1st) 232164, ¶¶ 46-50 (discussing and collecting cases on court split). Absent direction from our supreme court on this significant issue, we continue to find persuasive *People v. Saucedo*, 2024 IL App (1st) 232020, which takes somewhat of a bifurcated approach to review of the three elements. But see *People v. Whitmore*, 2023 IL App (1st) 231807, ¶ 18 (applying abuse of discretion to all three elements). Applying *Saucedo*, with regard to the first

---

[6]The motion for relief shall serve as the appellant's argument on appeal, but appellant may also file a supplemental memorandum in further support of the claims on appeal. Ill. S. Ct. R. 604(h)(7) (eff. April 15, 2024).

two elements of the petition, we apply the manifest weight of the evidence standard, where reversal is only warranted when the "opposite conclusion is clearly evident or if the finding itself was unreasonable, arbitrary, or not based on the evidence presented." *Saucedo*, 2024 IL App (1st) 232020, ¶¶ 31-32, 35; *Parker*, 2024 IL App (1st) 232164, ¶¶ 48-50; *People v. Reed*, 2023 IL App (1st) 231834, ¶ 24. With regard to the third element of the petition, we apply the abuse of discretion standard. *Saucedo*, 2024 IL App (1st) 232030, ¶ 36. Thus, when considering whether the circuit court's determination on the conditions of release factor was proper, we are mindful of the level of discretion afforded to such findings, where an abuse of discretion only occurs where the court's findings are "arbitrary, fanciful, or unreasonable, or where no reasonable person would agree with the position adopted by the [circuit court.]" *Id.*

¶ 48                                  C. Arguments

¶ 49                              1. Detainable Offense

¶ 50    Defendant presents no challenge to the court's finding that the offense of armed habitual criminal qualifies as a detainable offense under the Procedure Code. See 725 ILCS 5/110-6.1(a)(1). The issue is therefore not before us, and we do not address it.

¶ 51                            2. Real and Present Threat

¶ 52    Defendant relies on his arguments made in his motion for relief, namely that the circuit court erred in finding that he was a real and present threat for the reasons outlined prior.

¶ 53    The State responds that the court properly determined that defendant was a real and present danger. Regarding his criminal history, the State asserts that defendant was already a convicted felon with multiple convictions for prior gun offenses. Moreover, the State points out, defendant was on parole for one of those prior gun convictions when he was arrested in this case. Thus, the

State reasons, defendant had "ready access to illegal weapons" and continuously disregarded the laws of the state when he was already prohibited from doing so.

¶ 54    Regarding the facts of this case, the State asserts that defendant was found in possession of two firearms, one with a defaced serial number, and one with an extended magazine. The State reasons that the number and condition of the weapons evince a reasonable conclusion that defendant was going to use them for unlawful purposes, citing *People v. Ramirez*, 2023 IL 128123, *People v. Ross*, 229 Ill. 2d 255 (2008), and *People v. Dixon*, 2015 IL App (1st) 133303, in support. The State also rejects defendant's contention that simply having loaded guns did not imply he was dangerous. Although the State concedes that there is no evidence of defendant attempting to use the firearms, the State contends that defendant's possession of them turned a routine traffic stop into a more dangerous situation when he tried to flee from officers while armed, citing *People v. Vance*, 2024 IL App (1st) 232503, and *People v. Brooks*, 2022 IL App (3d) 190761. Moreover, the State concludes, even nonviolent acts may still threaten the safety of others, citing *People v. Daniel*, 2024 IL App (1st) 240153-U.

¶ 55    Last, the State observes that, in the motion for relief, defendant argued that the State failed to prove that he was a flight risk. The State asserts that defendant misapprehends the State's position, as it did not assert that he was a flight risk and is not required to do so now.

¶ 56    At the outset, we agree with the State that the record reflects that it did not make any arguments as to defendant being a potential flight risk. Moreover, the State need not argue flight risk in order to succeed on its petition. See 725 ILCS 5/110-6.1(d) (West 2020) (the State's petition must state the grounds for denial of pretrial release, "including the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts *or flight risk*, as appropriate.") (Emphasis added.)

¶ 57    In reviewing the record, we do not find the court's conclusion that the State had met its burden on this element to be against the manifest weight of the evidence. The record reflects that the circuit court carefully considered all aspects of the proffer based on a variety of statutory factors to determine that defendant still presented a real and present danger to the community.

¶ 58    First, the court properly considered defendant's history and characteristics with regard to his overall criminal background, of which, as we have noted above, we do not have any documentary evidence beyond the parties' assertions at the hearing. See 725 ILCS 5/110-6.1(g)(2) (West 2020).[7] The report of proceedings reflects that defendant was convicted of multiple prior felony offenses, two of which were the same offenses he was currently charged with. Specifically, defendant had been convicted in 2012 for possession of a stolen vehicle, in 2013 for unlawful use of a weapon by a felon, in 2015 for two convictions for manufacturing and delivery, and another conviction in 2017 for unlawful possession of a weapon by a felon, for which he was on parole at the time of his arrest. *Id.* § 5/110-6.1(g)(7) (considering whether defendant is known to possess or have access to weapons); *Id.* § 5/110-6.1(g)(8) (considering whether defendant was on parole for unrelated crimes at time of current offense or arrest). On that latter point, the court expressly noted that defendant's parole status clearly had not deterred him from allegedly engaging in more serious crimes, including ones for which he had already been convicted and served time for within the past decade. See *id.* § 5/110-6.1(g)(2)(A) (considering evidence of prior criminal history indicative of violent, abusive, or assaultive behavior); *Id.* § 5/110-6.1(g)(9) (court may assess any other factors that it believes has a reasonable bearing on the defendant's propensity or reputation for violent, abusive, or assaultive behavior).

---

[7]See 725 ILCS 5/110-6.1(f)(5) (West 2020) (standard evidentiary rules of admissibly do not apply to detention hearings); *Reed*, 2023 IL App (1st) 231834, ¶ 22.

¶ 59    Next, the circuit court properly considered the nature and circumstances of the charged offenses, including that the current charges involved two weapons, one with a defaced serial number, and an extended magazine. *Id.* § 5/110-6.1(g)(1). We, as did the circuit court, do not find persuasive defendant's argument that his possession of the two guns was a nonviolent crime simply because there was no direct evidence of him harming or intending to harm anyone with them. Indeed, the circuit court noted that defendant's actions, even when putting aside his status as a felon, ["took] it a step further, as one of the guns had a defaced serial number, thus making it more likely than not that defendant was going to be using such weapons in the commission of a crime, and not simply for lawful possession." See *People v. Ramirez*, 2023 IL 128123, ¶ 27 ("It has long been recognized that defaced firearms are uniquely suited for use in the commission of crimes," as defaced firearms are done "so that they are untraceable by law enforcement" and "are not typically used by law-abiding citizens for lawful purposes."); *People v. Davis*, 2023 IL App (1st) 231856, ¶ 27 ("Ghost guns are designed to avoid surveillance and avoid notice by law enforcement" as "[t]hey are *** difficult for police to trace, [and] to prevent any use of the gun from being linked back to the user.")

¶ 60    Additionally, at least one of the guns was loaded and defendant was also found with multiple rounds of ammunition and an extended magazine. See *People v. Ross*, 229 Ill. 2d 255, 273 (2008) (noting generally that a loaded gun is "[a] weapon with which death may be easily and readily produced") (Internal citation omitted.); *Parker*, 2024 IL App (1st) 232164, ¶ 74 (upholding detainment where, even if firearm by itself was not considered dangerous, it became so when it was loaded and had an extended magazine attached to it). Thus, regardless of whether there was evidence of defendant's intent to either use or brandish the firearms, the guns were considered to be highly destructive and dangerous. See *People v. Vance*, 2024 IL App (1st) 232503, ¶¶ 22-23

(even without evidence of defendant brandishing or threatening anyone with a weapon and defendant otherwise having no violent criminal history, dangerousness element satisfied where defendant possessed a loaded, fully automatic weapon in a stolen vehicle). We also note, as the State pointed out during the hearing, defendant attempted to flee from police during arrest while in possession of at least one loaded weapon, thus creating a more dangerous atmosphere for himself and the others involved. See, *e.g.*, *People v. Daniel*, 2024 IL App (1st) 240153-U, ¶ 23 (finding that tossing a loaded firearm into a backyard sufficiently threatened others' safety).

¶ 61    Finally, the court also considered the threat defendant posed to the community at large based on his status as a felon and the well-known prohibitions against felons possessing dangerous weapons, which was demonstrated by the fact that defendant did not have a valid FOID or CCL card when he was arrested. See 430 ILCS 65/1 (West 2020) ("[T]o promote and protect the health, safety and welfare of the public, it is necessary and in the public interest to provide a system of identifying persons who are not qualified to acquire or possess firearms [and] firearm ammunition[.]"); 720 ILCS 5/24-1.1 (convicted felons may not possess firearms); *People v. Brooks*, 2022 IL App (3d) 190761, ¶ 16 ("There is no question that the AUUW and UUW statutes were enacted for the same purpose, [*i.e.*], protecting the police and the public from dangerous weapons."); *Daniel*, 2024 IL App (1st) 240153-U, ¶ 23 ("Firearms are dangerous weapons, and the legislature tightly controls both their possession and storage.") Thus, defendant's possession of firearms, including the gun with the defaced serial number, flies in the face of the "legislature's stated purpose of promoting and protecting the safety of the public from the unlawful possession of firearms by certain individuals." *Davis*, 2023 IL App (1st) 231856, ¶ 28.

¶ 62    Based on the record before us, we find that the circuit court fully considered all aspects of the proffer pursuant to the comprehensive statutory requirements, which included a variety of

factors ranging from the nature of the alleged crime to defendant's individualized history and characteristics. Thus, we do not find that an opposite conclusion concerning defendant's real and present threat was clearly evident, or that the court's findings were unreasonable based on the evidence presented.

¶ 63                                    3. Conditions

¶ 64    Finally, defendant's motion for relief against the third element of the petition is twofold. First, defendant argues that the State did not present any evidence to demonstrate that there were no appropriate conditions for release to mitigate any threat defendant presented to the community. Second, defendant contends that the court erred when it made a generalized assessment that electronic monitoring or home confinement could not be tailored to mitigate any concerns about defendant's future appearances at court or in picking up other criminal charges while awaiting trial.

¶ 65    The State responds that the trial court properly determined that there were no less restrictive conditions that would mitigate defendant's threat to the community. The State again points to the facts and circumstances of the case, as well as defendant's prior criminal history, noting most significantly that, even after being convicted of two firearm-related offenses, defendant continued to possess them. In particular, notes the State, defendant possessed two firearms while being on parole for a previous firearm conviction, and had attempted to flee during arrest. Thus, the State reasons, the circuit court correctly assessed the individualized circumstances of the case and determined that defendant would not comply with pretrial conditions, citing *Davis*, 2023 IL App (1st) 231856, and *People v. Mancilla*, 2024 IL App (2d) 230505. The State further rejects defendant's contention that he could be placed on electronic monitoring with movement restriction, again reiterating that defendant's conduct already showed that he could not be deterred

from obtaining firearms, which again highlighted the fact that the court's determination was individualized to the facts of the case.

¶ 66    Preliminarily, we observe that the plain language of the Procedure Code indicates that the "dangerousness" assessment overlaps with the analysis of whether any conditions are appropriate in lieu of pretrial detention. Compare 725 ILCS 5/110-6.1(g)(9) (dangerousness analysis may include factors listed in section 110-5 of the Procedure Code, which provides similar statutory factors for conditions analysis) with 725 ILCS 5/110-5(a); *People v. Carpenter*, 2024 IL App (1st) 240037, ¶ 17 ("The proof as to the danger presented by a defendant's pretrial release will frequently overlap with the evidence supporting a conclusion that less restrictive conditions cannot mitigate the threat.") However, courts must also indicate why no set of conditions would suffice to mitigate the threat examined within the second element of the petition. *Vance*, 2024 IL App (1st) 232503, ¶ 27.

¶ 67    Here, the record reflects that the court properly considered all aspects of whether there were any conditions that could mitigate the clear and present risk posed by defendant. In particular, the court noted that it did not believe electronic home monitoring or home confinement would be appropriate in light of the serious allegations against defendant. See *Vance*, 2024 IL App (1st) 232503, ¶ 24 (rejecting contention that electronic monitoring and home confinement were proper conditions of release where court was concerned with future violations of detention order and how promptly such violations would be brought to court's attention).

¶ 68    The court also considered that defendant had already been convicted of and was on parole for the same charged offense, and yet had been undeterred from possessing weapons, thus indicating that he had no regard for such restrictions. See 725 ILCS 5/110-5(g) (West 2020) (electronic home monitoring or home confinement may only be appropriate if no other less

restrictive condition would reasonably ensure defendant's appearance or protect an identifiable person from imminent threat of serious physical harm); 725 ILCS 5/110-5(a)(5) (assessing the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process); *Id.* § 5/110-5(a)(3)(A) (assessing prior criminal history and other court proceedings); *Id.* § 5/110-5(a)(3)(B) (assessing whether at the time of current offense or arrest, defendant was on parole or had completed a sentence for another crime); *Daniel*, 2024 IL App (1st) 240153-U, ¶ 25 (finding in part that no such conditions could mitigate the defendant's risk where he had committed detainable crime while on mandatory supervised release and thus had "failed to comply with conditions short of detention."); *Davis*, 2023 IL App (1st) 231856, ¶ 31 ("Defendant's history showed an unwillingness to follow the rules set by our law enforcement authorities[.]")

¶ 69    Additionally, as detailed above, the court was concerned about defendant's persistence in obtaining firearms despite his status as a felon, regardless of his parole status. 725 ILCS 5/110-5(a)(4) (assessing nature and seriousness of the real and present threat posed by defendant to the safety of the community); *Id.* § 5/110-5(a)(1) (assessing nature and circumstances of the charged offenses). As discussed prior, our legislature has made it clear that felons in possession of weapons pose a threat to the community at large. Thus, we do not find any error with respect to the court's determination on this element.

¶ 70    In sum, we do not find that the circuit court erred in concluding that the State satisfied its burden on all three elements of its petition. We ultimately conclude that the circuit court properly granted the State's request for defendant's continued detention following the amendments to the Procedure Code and affirm the order in its entirety.

¶ 71                                    III. CONCLUSION

¶ 72    For the reasons stated, we affirm the judgment of the circuit court.

¶ 73    Affirmed.

¶ 74    FITZGERALD SMITH, P.J., specially concurring:

¶ 75    I concur in the judgment and reasoning. I write only to specify that I would follow Whitmore to instead employ an abuse of discretion standard of review to all three statutory elements of the petition, rather than the bifurcated approach used here. See *Whitmore*, 2023 IL App (1st) 231807, ¶ 18; see also *Inman*, 2023 IL App (4th) 230864, ¶ 11, and *People v. Davis*, 2023 IL App (1st) 231856, ¶¶ 16-17. Ultimately, however, and just as the majority has pointed out, under either standard, the result would most certainly be the same.