2024 IL App (1st) 241746-U

No. 1-24-1746

Order filed November 21, 2024

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

|  |  |  |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | Nos. 22 CR 06738 |
| v. | ) | 22 CR 09861 |
| | ) | 23 CR 10764 |
| DWAYNE HENRY, | ) | 24 CR 00339 |
| | ) | |
| Defendant-Appellant. | ) ) ) | Honorable Kenneth J. Wadas, Judge Presiding. |

_____

JUSTICE LYLE delivered the judgment of the court.
Presiding Justice Rochford and Justice Ocasio concurred in the judgment.

**ORDER**

¶ 1     *Held*:  We affirm the judgment of the circuit court of Cook County that the defendant
          should remain in pretrial detention.

¶ 2     Defendant Dwayne Henry appeals from an order of the circuit court of Cook County

denying him pretrial release under article 110 of the Code of Criminal Procedure of 1963 (Code)

(725 ILCS 5/110 *et seq.* (West 2022), as amended by Public Act 101-652 § 10-255 (eff. Jan. 1,

2023)), commonly known as the Safety, Accountability, Fairness and Equity-Today Act (Act). Mr. Henry contends that the court erred in finding that he posed a threat to any person or persons or the community because he had been charged with only the possession of a weapon, but had not been charged with any violent crimes. Mr. Henry also asserts that the State did not present any evidence suggesting that he was a flight risk, and maintains that electronic monitoring or home confinement would address any concerns about the threat he allegedly poses. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      Mr. Henry was arrested on September 4, 2023, and charged with unlawful use or possession of a weapon by a felon (UUWF) (720 ILCS 5/24-1.1(a) (West 2022)) and aggravated unlawful use of a weapon (AUUW) (720 ILCS 5/24-1.6(a)(1), (a)(3)(C) (West 2022)) in case No. 23-CR-10764. At the time of the arrest, Mr. Henry was on probation for two drug-related offenses (720 ILCS 570/402(c) (West 2022)) in case Nos. 22-CR-06738 and 22-CR-09861. Before the Act went into effect, he posted bond and was released. On October 20, the State filed a petition for violation of probation and Mr. Henry was placed on electronic monitoring. Mr. Henry was released from electronic monitoring a week later when he posted a cash bond.

¶ 5      On November 28, 2023, after the Act went into effect, Mr. Henry was arrested and subsequently charged with forgery (720 ILCS 5/17-3(a)(1) (West 2022)) and resisting a peace officer (720 ILCS 5/31-1(a-7) (West 2022)) in case No. 24-CR-00339. The following day, the State filed a petition for revocation of pretrial release. The court held a hearing on the State's

petition and ordered Mr. Henry detained. The record filed on appeal does not include the State's petition, a report of proceedings from the detention hearing, or the court's written detention order.[1]

¶ 6    On February 20, 2024, Mr. Henry filed a petition to grant pretrial release with regard to case No. 24-CR-00339. In the petition, Mr. Henry represented that he was arrested on September 4, 2023, and charged with UUWF and AUUW. The petition further noted that the State filed a petition to revoke his pretrial release on November 29, 2023. He stated that as of the date of the petition he had been in custody for 80 days. Mr. Henry noted that, under the Act, the court was required to find at each subsequent appearance that continued detention was necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or to prevent the defendant's willful flight from prosecution. 725 ILCS 5/110-6.1(i-5) (West 2022). Mr. Henry represented that he had a child who had multiple hospital visits during the past two months and he needed to help his son's mother with managing the child's medical issues.

¶ 7    The record reflects that a hearing was held on Mr. Henry's petition, after which the court entered an order finding that Mr. Henry should remain in pretrial detention. The report of proceedings from the hearing is not included in the record filed on appeal. The circuit court's written order following the hearing reflects that the court found that the State had met its burden to prove that Mr. Henry committed a detainable offense under the Act, listing "forgery, resisting P.O. – UUW Felon violation of fel prob. x2 [*sic*]." The court also found that Mr. Henry posed a threat to the safety of any person or persons or the community because, while on felony probation

---

[1]The information regarding the State's petition and the hearing was derived from the computerized docket of the clerk of the circuit court of Cook County, of which this court may take judicial notice. *People v. Schulz*, 2024 IL App (1st) 240422, ¶ 12.

for two narcotics offenses, he was charged with unlawful use of a weapon by a felon, posted bond, and was subsequently charged with forgery and resisting arrest while he was out on bond on the unlawful use of a weapon case. The court's written order reflects that it found the same facts supported the conclusion that no condition or combination of condition could mitigate the threat that Mr. Henry posed.

¶ 8    On May 2, 2024, Mr. Henry filed four identical petitions to "grant pretrial release under new law" for each of his four cases. The four petitions were substantially similar to the petition Mr. Henry filed in February 2024, but noted that he had been in custody for 156 days as of the date of the petition. The court held a detention hearing on May 15, 2024. The report of proceedings from the May 15 hearing is not included in the record filed on appeal. After the hearing, the court entered a written "Order After Revocation Hearing." The court's order reflects that the matter came before the court on a verified petition by the State for the revocation of pretrial release, although no such petition appears in the record. The court found that while on pretrial release in case No. 23-CR-10764, Mr. Henry was charged with a new felony or Class A Misdemeanor in case No. 24-CR-00339. The court found that no condition or combination of conditions would reasonably prevent Mr. Henry from being charged with a subsequent felony or Class A misdemeanor, revoked Mr. Henry's pretrial release, and remanded him to the custody of the sheriff at the Cook County Jail.

¶ 9    The circuit held a consolidated detention review hearing on Mr. Henry's four matters on August 8, 2024.

¶ 10    At the hearing, the State proffered that Mr. Henry was on probation at the time of both case Nos. 23-CR-10764 and 24-CR-00339. In case No. 23-CR-107641, in September 2023, Mr. Henry committed a traffic violation while he was driving a vehicle and was stopped by officers on routine

patrol. The officers smelled burnt cannabis in Mr. Henry's vehicle and asked him for his driver's license. Mr. Henry produced a state ID, but did not have his driver's license. The officers observed smoked marijuana cigarettes in plain view inside the vehicle. They conducted a search of the vehicle and recovered multiple smoked marijuana cigarettes from the center console. The officers searched the trunk of the vehicle where they discovered a black backpack. One of the officers felt a metal object inside the backpack, which he believed to be a firearm. The officer recovered the firearm from the backpack, and discovered it was a "ghost gun."[2] The firearm was a semi-automatic, nine-millimeter with an extended magazine, capable of holding 30 rounds. The gun was loaded with one bullet in the chamber. Officers also recovered from the backpack several pieces of mail addressed to Mr. Henry.

¶ 11    Mr. Henry did not possess a valid concealed carry license or firearm owners' identification (FOID) card. Mr. Henry was taken into custody and placed in the squad car. While in the squad car, Mr. Henry spontaneously stated, "They got me with my gun." At the time of the arrest, Mr. Henry was a convicted felon. Mr. Henry had a bond hearing prior to the Act going into effect where he received a $75,000 D-bond. Mr. Henry posted the bond and was released from custody.

¶ 12    While on pretrial release, Mr. Henry was involved in a forgery and resisting a peace officer incident in November 2023 under case No. 24-CR-00339. Mr. Henry approached a Chase bank customer who had a money order for $1. Mr. Henry altered the money order to make it appear as though it was for $759.89. Mr. Henry instructed the customer to deposit the money from the money order into their bank account and then withdraw the money and give it to him. The customer

---

[2]According to the Bureau of Alcohol, Tobacco, Firearms and Explosives, "ghost guns" are homemade firearms without serial numbers, making them difficult for police to trace. Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. 24,652 (Apr. 26, 2022) (to be codified at 27 C.F.R. pts. 447, 478, and 479).

approached the bank teller inside, who informed the customer of the scheme. The customer then left the bank and walked with Mr. Henry to the Loyola Campus police station. At the police station, another witness was there to report that Mr. Henry had been harassing her. An officer attempted to grab Mr. Henry, but Mr. Henry pulled him down to the ground and ran. The officer sustained abrasions to both of his knees. The police officer was in full uniform, and Mr. Henry admitted that he knew he was a police officer.

¶ 13 Defense counsel argued that the State failed to meet its burden to prove by clear and convincing evidence that Mr. Henry posed a real and present threat to the safety of any person or persons or the community. Defense counsel acknowledged that Mr. Henry was on probation for two cases at the time of his arrests, but noted that the probation was for nonviolent, drug cases. Defense counsel contended that the gun charge in case No. 23-CR-107641 was also a nonviolent offense. Defense counsel cited this court's decision in *People v. Martinez*, 2024 IL App (1st) 240241-U for the proposition that because Mr. Henry was not using the gun in a threatening manner, the mere possession of the gun did not meet the level needed to prove his dangerousness. Defense counsel asserted that because the firearm was found in a backpack in the trunk of Mr. Henry's vehicle, there was no suggestion that he was using the firearm in a threatening manner. Defense counsel further argued that the forgery and the resisting a peace officer charges were also nonviolent crimes. Defense counsel contended that Mr. Henry was running from the officer and the officer "unintentionally" fell.

¶ 14 Defense counsel continued that the State had failed to meet its burden to show that Mr. Henry posed a risk of "willful flight," and failed to prove by clear and convincing evidence that no condition or combination of conditions could mitigate any threat that he posed. Defense counsel posited that electronic monitoring would address any concerns that Mr. Henry could pick up

another charge. Defense counsel noted that Mr. Henry had a young son who had been in and out of the hospital after being diagnosed with a pulmonary issue. Defense counsel stated that Mr. Henry needed to help his son's mother with those issues. Defense counsel therefore asked that Mr. Henry be released on electronic monitoring.

¶ 15 In response, the State first contended that it had met its burden to show that the proof was evident and the presumption great that Mr. Henry committed detainable offenses, first with the unlawful possession of the weapon and then with the forgery and resisting offenses. The State further asserted that Mr. Henry posed a real and present threat to any person or persons or the community based on his "significant" felony background, consisting of the two probation drug cases, a 2022 charge for theft and forgery, a 2022 charge for theft by deception, and a 2013 attempted robbery. The State noted that the gun in this case was a "ghost gun" that had been equipped with an extended magazine which posed additional significant threats. The State acknowledged that the allegations regarding the forgery charge were nonviolent, but the resisting the officer charge resulted in injuries to the officer. The State maintained that the fact that Mr. Henry attempted to flee from the officer supported the State's position that he was a flight risk.

¶ 16 The State argued that no condition or combination of conditions could mitigate the threat Mr. Henry posed because Mr. Henry was out on conditions when he picked up the current charges and was on probation at the time. The State contended that Mr. Henry's background showed that he had been given numerous chances on probation but had violated his probation many times by picking up additional charges. The State concluded that Mr. Henry would not be an appropriate candidate for electronic monitoring given his history of not following court-imposed conditions.

¶ 17 The court found that Mr. Henry's criminal background was "extensive," noting the fact that he was on probation for two offenses when he picked up his two current cases. The court

rejected defense counsel's contention that Mr. Henry's possession of the firearm was nonviolent. The court observed that the firearm was a ghost gun and had a 30-round magazine, which posed the "potential [for] extreme violence." With regard to the forgery and resisting a peace officer charges, the court found that the fact that Mr. Henry attempted to avoid arrest demonstrated that he had "a track record of flight." The court further found that Mr. Henry threw a police officer to the ground to avoid being arrested, which was a crime of violence. The court noted that these offenses occurred while Mr. Henry was on pretrial release for felony charges and on probation. The court determined that the State had met its burden of proving by clear and convincing evidence that no condition or combination of conditions could reasonably prevent Mr. Henry from being charged with subsequent felonies or class A misdemeanors. The court rejected defense counsel's suggestion that Mr. Henry could be placed on electronic monitoring. The court found that, based on Mr. Henry's prior background, he was likely to cut the band off and commit another offense. Accordingly, the court denied the motion for pretrial release and ordered Mr. Henry to remain in pretrial custody.

¶ 18    Defense counsel filed identical motions for relief for each of the four cases, contending that Mr. Henry's petitions for pretrial release should not have been denied because the State failed to prove by clear and convincing evidence that Mr. Henry posed a real and present threat to the safety of any person or persons or the community. Counsel maintained that Mr. Henry had not been charged with violent crimes and merely possessed a weapon, but did not use it to threaten anyone. Counsel further asserted that the State failed to present any evidence that Mr. Henry was a flight risk. Finally, counsel argued that electronic monitoring and home confinement would address any concerns about the threat posed by Mr. Henry.

¶ 19    The court denied the motions for relief, finding that Mr. Henry had "multiple bites at the apple," but kept picking up new cases. The court therefore stood on its ruling that Mr. Henry should remain in pretrial detention. Mr. Henry filed timely notices of appeal from the circuit court's judgment. This court later granted his motion to file amended notices of appeal because Mr. Henry's counsel used the older notice of appeal forms. The original and amended notices of appeal listed only the court's August 8, 2024, order as the order appealed from. We find that we have jurisdiction to consider the merits of this appeal pursuant to Illinois Supreme Court Rule 604(h)(1)(iii) (eff. Apr. 15, 2024).

¶ 20                                    II. ANALYSIS

¶ 21    Mr. Henry did not file an appellant memorandum and elected to stand on the arguments made in his motions for relief pursuant to Illinois Supreme Court Rule 604(h)(7) (eff. Apr. 15, 2024). In his motions for relief, Mr. Henry contended that the circuit court erred in finding that he posed a real and present threat to the safety of any person or persons or the community and erred in finding that no condition or combination of conditions could mitigate the threat he posed.

¶ 22    Before we proceed with our analysis, we must first address the procedural history in this case, which is difficult to discern due to the lack of a complete record. Mr. Henry committed the offenses in case No. 23-CR-10764 on September 3, 2023, before the Act went into effect. As such, Mr. Henry was subject to the previous bond regime; he posted bond and was released. While he was on pretrial release, the Act went into effect. *Rowe v. Raoul*, 2023 IL 129248, ¶ 52. After the Act went into effect, Mr. Henry was arrested and charged in case No. 24-CR-00339 in November 2023. The State filed a petition to detain Mr. Henry. Although it is not included in the record, the State represents in its appellee memorandum that its petition sought for Mr. Henry to be detained

on case No. 23-CR-10764 based on his new charges for forgery and resisting a peace officer in case No. 24-CR-00339. The court granted the petition. Mr. Henry did not appeal that order.

¶ 23    In February 2024, Mr. Henry filed a petition to grant pretrial release with regard to case 24-CR-00339. It is unclear whether Mr. Henry was detained on that case at the time of the petition or whether he was being held only on case No. 23-CR-10764 based on the State's November 2023 petition. Nonetheless, the court ordered that Mr. Henry should remain in pretrial detention. Mr. Henry did not appeal that order.

¶ 24    In May 2024, Mr. Henry filed four identical petitions to "grant pretrial release under new law" for each of his four cases. It is unclear why Mr. Henry filed petitions with regard to the cases where he was on probation. At the time, the court had ordered Mr. Henry detained on case No. 23-CR-10764 and had denied his petition for pretrial release on case No. 24-CR-00339. Although Mr. Henry was on probation at the time he committed those offenses, he was not detained on the probation cases. Nonetheless, each of Mr. Henry's petitions noted that he had already been detained pretrial and was asking the court to determine whether his continued detention was necessary.

¶ 25    At the August 8 consolidated hearing, the State argued that Mr. Henry committed detainable offenses, that he posed a threat to the safety of any person or persons or the community, and that no condition or combination of conditions could mitigate that threat. However, these are the factors to be considered at an initial detention hearing. As noted, the court had already detained Mr. Henry on both his current cases.

¶ 26    The Act provides for differing standards depending on whether the defendant is at an initial pretrial detention hearing or whether the defendant is at a subsequent appearance before the court. Compare 725 ILCS 5/110-6.1(e) (West 2022) with 725 ILCS 5/110-6.1(i-5) (West 2022). At an

initial hearing, the State has the burden of proving that a defendant should be denied pretrial release. 725 ILCS 5/110-2(a), 110-6.1 (West 2022). To meet its burden, the State must prove by clear and convincing evidence that: (1) the proof is evident or the presumption great that the defendant has committed an offense that qualifies for pretrial detention; (2) the defendant poses a real and present threat to the safety of any person or persons in the community based on the specific and articulable facts of the case; and (3) no condition or combination of conditions of pretrial release can mitigate the real and present threat to the safety of any person or persons in the community, based on the specific and articulable facts of the case. 725 ILCS 5/110-6.1(e) (West 2022).

¶ 27    If a defendant is detained pretrial, at subsequent appearances, the court must find "that continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or to prevent the defendant's willful flight from prosecution." 725 ILCS 5/110-6.1(i-5) (West 2022); *People v. Hongo*, 2024 IL App (1st) 232482, ¶ 21. In this case, Mr. Henry was detained pretrial, and the August 8 consolidated hearing was a subsequent appearance before the court where the only consideration was whether Mr. Harris should remain in pretrial detention.

¶ 28    Thus, the only question before us is whether the court erred in finding that that continued detention was necessary. *People v. Casey*, 2024 IL App (3d) 230568, ¶ 13. "Although this determination necessarily entails consideration of the threat or flight risk posed by a defendant and the potential mitigation of such threat or flight risk by conditions of release, the Code does not require the court to again make specific findings that the State proved the three propositions by clear and convincing evidence as required at the initial hearing." *Id.*

¶ 29    We observe that there has been "significant disagreement" in the appellate court over the proper stand of review to apply to the circuit court's rulings following a detention hearing under the Act. See *People v. Lee*, 2024 IL App (1st) 232137, ¶ 20. We find it unnecessary to determine which standard applies in this case, as the result would be the same under any standard. See *Hongo*, 2024 IL App (1st) 232482, ¶ 22.

¶ 30    Based on the circumstances presented in this case, we find that the trial court did not err in finding that Mr. Henry's continued detention was necessary. The record shows that Mr. Henry was on probation for two narcotics offenses when he was charged with UUWF and AUUW. While on pretrial release for that case, he committed two more offenses. The firearm Mr. Henry possessed was a "ghost gun" and had an extended magazine. The court noted that the gun posed the "potential [for] extreme violence."

¶ 31    Mr. Henry nonetheless contends that the court erred in finding that his mere possession of the firearm was sufficient to demonstrate that his continued detention was necessary to avoid a real and present threat to the safety of any person or persons or the community. Mr. Henry maintains that he did not use the firearm in a violent manner and did not threaten anyone with the weapon. This argument, however, ignores Mr. Henry's extensive criminal history, and the inherent dangerousness of firearms, particularly when they are in the possession of those who have been prohibited from possessing them. *People v. Lee*, 2024 IL App (1st) 232137, ¶ 27.

¶ 32    First, Mr. Henry was charged with UUWF. The UUWF statute provides that it is "unlawful for a person to knowingly possess on or about his person or on his land or in his own abode or fixed place of business any weapon prohibited under Section 24-1 of this Act or any firearm or any firearm ammunition if the person has been convicted of a felony under the laws of this State or any other jurisdiction." 720 ILCS 5/24-1.1(a) (West 2022). This statute is specifically aimed at

dangers posed by felons possessing firearms. See *Lee*, 2024 IL App (1st) 232137, ¶ 28. Mr. Henry, as a convicted felon, is explicitly prohibited from possessing a firearm. *Hongo*, 2024 IL App (1st) 232482, ¶ 35. "His possession of a ghost gun goes directly against the legislature's stated purpose of promoting and protecting the safety of the public from the unlawful possession of firearms by certain individuals." *People v. Davis*, 2023 IL App (1st) 231856, ¶ 28. As this court stated in *Davis*, "[w]e are hard pressed to come up with a benign reason for a felon to possess an untraceable firearm that was designed to avoid surveillance." *Id.*

¶ 33    Moreover, the State's proffer indicated that the ghost gun was loaded with one bullet in the chamber. Our supreme court has recognized that loaded guns are "dangerous *per se.*" *People v. Ross*, 229 Ill. 2d 255, 273 (2008). Mr. Henry was also on parole at the time he was found to be in possession of the firearm. "Defendant's history of failing to abide by prior conditions of release placed upon him, by possessing a weapon while prohibited from doing so, further suggests that continued detention is necessary to avoid the safety risk posed by defendant." *Hongo*, 2024 IL App (1st) 232482, ¶ 36 (citing *Lee*, 2024 IL App (1st) 232137, ¶ 33).

¶ 34    We find Mr. Henry's reliance on *Martinez*, 2024 IL App (1st) 240241-U[3] unpersuasive. In *Martinez*, the circuit court denied the defendant pretrial release under the Act after the defendant was charged with three counts of UUWF and two counts of AUUW. *Id.* ¶¶ 2-3. The State proffered that officers conducted a traffic stop of the defendant's vehicle and discovered a firearm on the driver's seat. *Id.* ¶ 4. The gun was loaded, and the defendant did not possess a FOID card. *Id.* The circuit court found, *inter alia*, that the State had proven by clear and convincing evidence that the

---

[3]Although *Martinez* is an unpublished case, we may consider it as persuasive authority as permitted under Illinois Supreme Court Rule 23(e)(1) (eff. Feb. 1, 2023).

defendant posed a threat to the safety of any person or community based on his possession of the firearm and the fact that the defendant was on parole for murder at the time of the arrest. *Id.* ¶ 7.

¶ 35    On appeal, this court reversed, noting that there was no evidence that the defendant threatened anyone with the gun or that the defendant had engaged in any threatening or violent behavior since being placed on parole. *Id.* ¶ 14. The court noted that defense counsel stated that prior to the defendant's arrest, he had been employed by the same company for the past two years, lived with his mother, and was volunteering at a community food pantry. *Id.* The court found that the only evidence presented that the defendant posed a threat to the safety of the community was the evidence supporting the charged offense and the fact that the defendant was on parole. *Id.*

¶ 36    First, we note that *Martinez* was an appeal from an initial detention hearing. Therefore, the State had the burden to prove by clear and convincing evidence that the defendant posed a threat to the safety of any person or persons or the community. 725 ILCS 5/110-6.1(e) (West 2022). By contrast, in this case, the court was required only to find "that continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or to prevent the defendant's willful flight from prosecution." 725 ILCS 5/110-6.1(i-5) (West 2022). Moreover, although the defendant in *Martinez* was on parole at the time of his arrest, he committed his most recent felony in the 1990s when he was a juvenile. *Martinez*, 2024 IL App (1st) 240241-U, ¶¶ 5, 6. In contrast, Mr. Henry was on probation for two narcotics cases, had a 2022 charge for theft and forgery, a 2022 charge for theft by deception, and a 2013 attempted robbery, in addition to the four charges at issue in this consolidated detention review. Thus, the evidence presented regarding the threat posed by Mr. Henry was substantially more than merely the evidence of the charged offenses and the fact that he was on parole.

¶ 37    Considering Mr. Henry's extensive criminal background, his possession of a ghost gun with an extended magazine when he was prohibited from possessing a firearm, in conjunction with his other charges of forgery and resisting a peace officer that were committed while he was on pretrial release, we hold that the court did not err in finding that his continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case. As the circuit court recognized, Mr. Henry routinely violated court-ordered conditions, and we agree with the court's determination that electronic monitoring or home confinement would not sufficiently mitigate the threat that Mr. Henry would commit more offenses.

¶ 38    Finally, we note that the State asserts in its appellee memorandum that we should reverse the court's detention of Mr. Henry in case No. 24-CR-00339 because neither forgery nor resisting a peace officer are detainable felonies. As discussed, however, whether the State met its burden to show that the defendant committed a detainable offense is a consideration at an initial detention hearing. 725 ILCS 5/110-6.1(e) (West 2022). This is an appeal from a continuing detention hearing, and the Act does not require the court to make any finding regarding whether the offenses are detainable. 725 ILCS 5/110-6.1(i-5) (West 2022). This is reasonable because the court has already made that determination and unless the nature of the charges has changed, there is no need for the court to revisit the issue. Mr. Henry did not appeal from the court's initial detention determination, and he did not raise the issue either before the circuit court at the consolidated hearing or before this court.

¶ 39    Nonetheless, although the State is correct that resisting a peace officer is not a detainable offense that is listed in the Act, the statute includes a residual clause for "any other felony which involves the threat of or infliction of great bodily harm or permanent disability or disfigurement."

725 ILCS 5/110-6.1(a)(1.5) (West 2022). We observe that at least one court has determined that resisting or obstructing a peace officer (720 ILCS 5/31-1(a-7) (West 2022)) can be a detainable offense under the Act. See *People v. Rodriguez*, 2023 IL App (3d) 230450. The *Rodriguez* court found that although the officer suffered only minor abrasions and bruises, the defendant's conduct created the threat that the officer could have suffered greater injuries, with the State arguing that the officer " 'was lucky to get out of the situation without permanent disfigurement.' " *Id.* ¶¶ 4-5. Other courts examining *Rodriguez* have determined that whether resisting a peace officer involves the threat of or infliction of great bodily harm or permanent disability or disfigurement depends on the facts of each case as presented in the State's proffer. *People v. Minssen*, 2024 IL App (4th) 231198, ¶ 24; *People v. Delaney*, 2024 IL App (5th) 240231, ¶ 25 ("Our interpretation would not require every felony or charge of aggravated fleeing to be considered a forcible felony. Rather, under our interpretation, a forcible felony occurs only when the circumstances of a particular case show that defendant's actions actually threatened or inflicted great bodily harm, permanent disability, or disfigurement.").

¶ 40     In this case, although the State's proffer from the consolidated hearing is included in the record, we do not know what the State proffered regarding the offense at Mr. Henry's initial detention hearing. We do not know what, if anything, the court stated regarding its finding that Mr. Henry committed a detainable offense. We observe that defense counsel represented at the consolidated hearing that the officer "unintentionally" fell while Mr. Henry was fleeing from him, but the court stated that Mr. Henry threw the officer to the ground to avoid being arrested. It would be improper at this stage for us to independently conclude without a suitable record and without the issue being properly before us that Mr. Henry should not be detained on case No. 24-CR-00339.

¶ 41                                         III. CONCLUSION

¶ 42    For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 43    Affirmed.