NOTICE
Decision filed 06/26/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 260251-U

NO. 5-26-0251

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 25-CF-1530 |
| | ) | |
| JAYTREON D. DORSEY, | ) | Honorable |
| | ) | Roger B. Webber, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE VAUGHAN delivered the judgment of the court.
Justices Barberis and Clarke concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court's orders granting the State's verified petition to deny pretrial release and denying the defendant's motion for relief are affirmed.

¶ 2    The defendant, Jaytreon D. Dorsey, appeals the December 12, 2025, order from the trial court of Champaign County that granted the State's petition to deny pretrial release, and the March 18, 2026, denial of his motion for relief. For the following reasons, we affirm.

¶ 3                              I. BACKGROUND

¶ 4    On December 12, 2025, the defendant was charged with two counts of unlawful possession of a weapon by a felon, a Class 3 felony. 720 ILCS 5/24-1.1(a) (West 2024). The same day, the State filed a petition to deny the defendant pretrial release. The petition alleged that the defendant

1

committed a detainable offense and that he posed a real and present threat to the safety of any person or persons or the community.

¶ 5    The trial court held a hearing on the State's petition on the same day. The State proceeded by proffer and provided the factual basis for the incident that occurred on December 11, 2025. The Street Crimes Task Force conducted a series of controlled purchases involving the defendant and another individual, David McClain,[1] originating from the defendant's address. Law enforcement obtained a search warrant for the defendant's address and executed it on December 11, 2025. Two individuals were present at the residence when the search was conducted, one of them being McClain. McClain told officers that he only stayed there "from time to time." The residence was a one bedroom apartment. The defendant later arrived and confirmed that the apartment was his. During the search, officers located a black 9-millimeter semiautomatic pistol loaded with an 18-round magazine and equipped with a laser light aiming device and a strobe light. The pistol was on the lower shelf of the bedroom closet. Officers also located a single-barreled shotgun on the bedroom closet floor. In a desk drawer, officers found two partially loaded magazines. One magazine contained ammunition for the pistol, and the other magazine ammunition did not match either firearm discovered during the search. The State asserted that this suggested "the existence of at least a third firearm involved with the defendant and/or Mr. McClain."

¶ 6    Officers also found the defendant's driver's license, which listed the same address as the residence. Additionally, several plastic resealable bags labeled "California cannabis" were found in the kitchen and bedroom, as well as digital scales. These items were consistent with the operation of drug sales. The clothing in the closet was in the defendant's size. The defendant had

---

[1]The co-defendant's name is spelled "McClain" and "McClane" throughout the record.

prior convictions, including a burglary conviction that made him a felon, which caused the possession of the firearms to be unlawful.

¶ 7    Defense counsel proffered that the defendant lived in the same place for two years and had a lot of family in the area. He was in "complete compliance" with his probation. Further, other individuals did "frequent" his residence, as he ran a "mini" music studio out of it.

¶ 8    The State argued that the defendant scored a five, which was mid-range, on the Virginia Pretrial Risk Assessment Instrument—Revised (VPRAI-R). The defendant's criminal history showed a "pattern of offenses" starting in 2010 through 2025. He was on probation at the time of the offense, which was a concern as to his dangerousness to the community. The State argued that the defendant posed a danger because he was "actively dealing substances either by himself or in the organized enterprise with Mr. McClain, and in the process of doing so, he's using this residence as part of that area out of which that dealing takes place." Within the residence, law enforcement discovered two firearms and "additional weaponry paraphernalia" as described above. The defendant's involvement in drug sales and owning firearms put the community at risk. The defendant was on probation and was aware that he needed to follow the law, which included not owning firearms because he was "forbidden from doing so because of his prior burglary conviction." The State argued that there was clear and convincing evidence that the defendant committed the offenses and was dangerous. Further, no conditions would be sufficient due to the defendant's prior criminal history, his VPRAI-R score, and the ongoing drug offenses that he was committing in conjunction with the detainable offense.

¶ 9    Defense counsel argued that the State did not prove by clear and convincing evidence that the defendant committed a detainable offense because while the firearms were located in the defendant's apartment, there were "many people who frequent[ed] his residence." Conditions

should be granted because the defendant was in "full compliance with his probation" and "completed many community-based sentences." Counsel argued that there was "nothing here to suggest that he [would not] obey the Court's orders." Counsel asked for the defendant to be released with conditions.

¶ 10 The trial court stated that it considered the defendant's proffer that other individuals frequented the defendant's apartment, but there was not any indicia of ownership or other identification of other people in the apartment. The defendant admitted the apartment was his and he resided there. The State thus proved by clear and convincing evidence that the proof was evident or presumption great that the defendant committed a detainable offense. While the pretrial report suggested that the defendant complied with his probation, relevant and reliable representations were made that the defendant was involved in the sale or distribution of illegal drugs, coupled with the number of firearms and magazines that were discovered during the search. The trial court stated that the issue was not whether the firearms were his, but whether he possessed them, and the State met its burden. Due to the threat to the community at large for firearms and drug dealing, there would not be any conditions that would mitigate the defendant's threat. The trial court granted the State's petition. The trial court entered a written detention order, finding the same.

¶ 11 On January 16, 2026, the defendant's public defender filed a "motion to reconsider pretrial detention," pursuant to section 110-7.5 of the Code of Criminal Procedure of 1963 (Code). 725 ILCS 5/110-7.5 (West 2024). The motion argued that the State failed to prove by clear and convincing evidence that the defendant committed a detainable offense, was a danger to society, and that there were no set of conditions that would mitigate the danger. The trial court relied upon the defendant's alleged involvement with illegal cannabis transactions. For the five controlled buys with law enforcement, the defendant was observed only to be the driver for three of the

4

transactions, and McClain was the individual involved in the sale of the drugs. One of the transactions involved the informant communicating with the defendant through a social media application to arrange the sale.

¶ 12    The matter proceeded to a hearing on January 20, 2026. Defense counsel argued that the State failed to prove that the defendant committed a detainable offense and that he was not involved in the controlled buys. Further, McClain was the individual who possessed the firearms, not the defendant. The defendant also previously completed probation. Defense counsel asked for the defendant's release with conditions. The State argued that the firearms were located in the bedroom of the apartment where the defendant lived alone. Signs of occupancy by the defendant were in the bedroom and living room, including his license, mail, and credit card. The State asked for continued detention. The trial court denied the motion to reconsider and told the defendant he may file a motion for relief. A written order for continued detention was entered the same day.

¶ 13    On March 9, 2026, through private counsel, the defendant filed a motion for relief pursuant to Illinois Supreme Court Rule 604(h). Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). The motion argued that the presumption was not great that the defendant committed the alleged offenses, the defendant did not pose a real and present danger to the community, the trial court's analysis of available pretrial release conditions was "skewed by inaccurate proffers from the State," and conditions could mitigate any dangerousness, and there were new developments which warrant the defendant's release. The motion alleged that the only connection between the firearms and the defendant was that the defendant was the sole name on the lease where the firearms were located. The defendant was not present during the search, but two other individuals were, including McClain. Further, fingerprint results showed a "lack of any matches" between the firearms and the defendant, but showed a connection with Teron Laws. Along with the defendant's identification

5

in the apartment, there were other documents for different individuals in the apartment as well. The motion argued that the defendant's dangerousness was misrepresented by the State by asserting he was involved in the drug deals. The defendant was only the driver for three of the transactions, he did not "participate in the transactions, touch any of the money[,] touch any of the contraband, or even leave his vehicle to accept [*sic*] to go home." Thus, the defendant was not "an armed drug dealer" as asserted by the State. The motion also argued that the trial court erred in considering the State's misrepresentations of the defendant as an armed drug dealer in its findings. The motion requested the defendant's release with conditions.

¶ 14    The matter proceeded to a hearing on March 18, 2026. Defense counsel argued that the proof was not evident or presumption great that the defendant committed a detainable offense because the only link between the defendant and the firearms was that his name was "the only one on that apartment lease." The defendant was not present during the search of the apartment, but two other individuals were. McClain and Nikki Pfiefer admitted to staying overnight at the apartment, and Pfiefer stayed in the bedroom of the apartment. Her driver's license and wallet were in the hallway, and McClain's was in the living room. Fingerprint analysis also showed another individual's fingerprints on the firearm but not the defendant's. Several other forms of identification were found in the apartment, such as a birth certificate and mail, for different individuals. The defendant's driver's license was also in the apartment.

¶ 15    Defense counsel argued that the defendant did not pose a real and present danger to the community, and this was misrepresented by the State. Counsel argued that the defendant was not involved in the controlled buys and the three that he drove McClain to, he was "never observed to participate in any aspect of the transaction" such as touching the money or contraband, or speaking to the informant. Further, the drug involved was cannabis. Counsel argued that the defendant was

6

not "an armed drug dealer" that posed a risk to the community. No drugs were discovered during the search. The defendant was also in "complete compliance with probation." Thus, the defendant did not present a danger.

¶ 16    Finally, conditions would be sufficient, and the trial court failed to provide an analysis as to why conditions would not mitigate the alleged threat. Conditions such as home confinement, GPS monitoring, or frequent check-ins with pretrial services would mitigate any threat posed. Defense counsel asked for the defendant's release with conditions.

¶ 17    The State argued that one of the controlled buys was "made through the defendant" and he was the driver for at least two of the buys. The firearms were not located in a common room of the apartment, but in the defendant's bedroom closet with clothing in his size. The defendant admitted he lived there. The defendant's recording business would not cause someone to go into his bedroom and place firearms in the closet. The fingerprint match also only meant that Teron Laws interacted with the firearm at some point, and it was a "fair inference that somebody other than Teron Laws put it" in the closet. The State argued that the defendant did show up during the search warrant, even if he was not initially present, and he informed officers that he lived there. The State argued that the defendant was not in compliance with the terms of his probation if he was involved in drug dealing and possessing a firearm. The State asked for the defendant to remain detained.

¶ 18    The trial court addressed the defendant's arguments, stating that the defendant had the strongest right of possession and occupancy of the apartment. The defendant was also involved in the sale of drugs through driving McClain to and from the deals and back to the defendant's apartment, and scheduling one of the buys through his social media account. The defendant also had a history involving the sale of cannabis. The trial court found the proof was evident or presumption great that the defendant committed a detainable offense of possessing a firearm. The

7

trial court said conditions such as home confinement would not be appropriate as the offense occurred within his apartment and the search warrant suggested that he was dealing cannabis from the apartment. Cannabis itself can also be dangerous and involve violence during sales, even if it was a less serious offense than other illicit drugs. The trial court denied the motion for relief.

¶ 19                                      II. ANALYSIS

¶ 20    The defendant appealed on March 20, 2026. The defendant's private trial counsel filed an entry on appearance on appeal. The defendant was permitted, but not required, to file a memorandum on appeal. Defense counsel never filed a memorandum or a notice in lieu pursuant to Rule 604(h)(7). "Issues raised in the motion for relief are before the appellate court regardless of whether the optional memorandum is filed." Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024). Therefore, our review is limited to the issues raised by the defendant in his motion for relief.

¶ 21                          A. Issues Presented on Appeal

¶ 22    In this case, the defendant's counsel filed two motions after the defendant's initial detention hearing. The first motion was titled a "Motion to Reconsider Pretrial Detention" and was filed pursuant to section 110-7.5 of the Code. 725 ILCS 5/110-7.5 (West 2024). This motion was not the proper procedure for pretrial detention, as required by Rule 604(h)(2). See Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). A motion for relief is a prerequisite to an appeal under Rule 604(h)(2), and the defendant did not file the motion under this rule. Further, the trial court did not treat it as a motion for relief, as it informed the defendant that he may file a motion for relief. As such, this motion does not represent the defendant's arguments on appeal.

¶ 23    The defendant filed a motion for relief on March 9, 2026, and this motion shall represent his argument on appeal. The motion argued that the presumption was not great that the defendant committed the alleged offenses, the defendant did not pose a real and present danger to the

8

community, the trial court's analysis of available pretrial release conditions was "skewed by inaccurate proffers from the State," and conditions could mitigate any dangerousness, and there were new developments which warrant the defendant's release.

¶ 24                           B. Standard of Review

¶ 25    Our standard of review of pretrial release determinations is dependent on whether the trial court heard live witness testimony or whether the parties proceeded solely by proffer or submission of documentary evidence. Where the parties to a pretrial detention hearing proceed solely by proffer or submission of documentary evidence, this court stands in the same position as the circuit court and may conduct its own independent review of the proffered evidence, thus reviewing the record *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54. Because the parties proceeded solely by proffer, our review is *de novo*.

¶ 26                      C. Commission of Qualifying Offense

¶ 27    Pretrial release is governed by article 110 of the Code, as amended by Public Act 101-652 (eff. Jan. 1, 2023), sometimes referred to as the Pretrial Fairness Act. Under article 110 of the Code, a defendant's pretrial release may only be denied in certain limited situations. See 725 ILCS 5/110-2(a), 110-6.1 (West 2024). If the State files a petition requesting denial of pretrial release,

> "[T]he State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that a defendant has committed a qualifying offense, that the defendant's pretrial release poses a real and present threat to the safety of [another] person or the community or a flight risk, and that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution." *People v. Vingara*, 2023 IL App (5th) 230698, ¶ 7. See 725 ILCS 5/110-6.1(e), (f) (West 2024).

Our supreme court has instructed that "[e]vidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74; *People v. Stock*, 2023 IL App (1st) 231753, ¶ 12.

¶ 28 The defendant argued in his motion for relief that the State failed to prove by clear and convincing evidence that the proof was evident or presumption great that he committed a detainable offense. The defendant asserts that there was only a "tenuous connection" between the defendant and the firearms, namely that they were found in the apartment's bedroom and the defendant was the sole occupant on the lease for it. The defendant argues that he was not present during the execution of the search warrant and that other individuals "frequent" his residence because he uses it as a music studio. Thus, one of the other individuals who visited, stayed, or left identification at his apartment had "much stronger linkages" than the defendant had.

¶ 29 At this stage, the State does not need to prove the defendant's guilt beyond a reasonable doubt. *Id*. ¶ 13. Instead, the State needs only to show that the proof is evident or the presumption great that the defendant has committed a qualifying offense "by clear and convincing evidence." 725 ILCS 5/110-6.1(e)(1) (West 2024). At the initial pretrial detention hearing, the State proceeded by proffer to present evidence "based upon reliable information." *Id*. § 110-6.1(f)(2).

¶ 30 In this case, the proffered information was based upon law enforcement's report after conducting a search warrant of the defendant's apartment. The search warrant was granted due to the defendant's involvement in at least three controlled buys with McClain. Officers discovered two firearms and two ammunition magazines in the bedroom closet. The defendant asserts that he did not have a strong enough connection to the firearms to possess them; however, he informed law enforcement that the apartment was his. The firearms were located in the bedroom closet with

10

the defendant's other personal effects. While mail and other documents were found in the apartment belonging to different individuals, they were not located in the bedroom area. The defendant's driver's license was located in the bedroom.

¶ 31 The defendant was a felon due to his 2019 burglary conviction in Champaign County. As a result, it was unlawful for him to "knowingly possess *** *in his own abode* *** any firearm or any firearm ammunition." (Emphasis added.) 720 ILCS 5/24-1.1(a) (West 2024). The defendant's pretrial investigation report stated that the defendant informed pretrial services he had lived in the apartment for two years and resided there alone. The report also showed his prior felony.

¶ 32 The record, as summarized above, shows the reliable information provided by the State to prove, by clear and convincing evidence, that the defendant committed a detainable offense of possessing a firearm as a felon. The report, facts, and proffer presented sufficiently meet the burden of proof. As such, we find that the proof is evident or presumption great that the defendant committed a detainable offense.

¶ 33                                      D. Real and Present Threat

¶ 34 The defendant argues that the State failed to prove by clear and convincing evidence that he posed a real and present threat to the safety of the community based on the specific articulable facts of the case because of the State's misrepresentations. The defendant focuses on statements from the trial court and the State in relation to his involvement in the controlled buys with McClain, asserting that the defendant was not involved in the drug deals because he was only the driver.

¶ 35 The court is provided a nonexhaustive list of factors it should consider when determining whether a defendant poses a real and present threat to the safety of any individual(s) or the community. These include the following:

11

"(1) The nature and circumstances of any offense charged, including whether the offense is a crime of violence, involving a weapon, or a sex offense.

(2) The history and characteristics of the defendant including:

(A) Any evidence of the defendant's prior criminal history indicative of violent, abusive, or assaultive behavior, or lack of such behavior. Such evidence may include testimony or documents received in juvenile proceedings, criminal, quasi-criminal, civil commitment, domestic relations or other proceedings.

(B) Any evidence of the defendant's psychological, psychiatric or other similar social history which tends to indicate a violent, abusive, or assaultive nature, or lack of any such history.

(3) The identity of any person or persons to whose safety the defendant is believed to pose a threat, and the nature of the threat.

(4) Any statements made by, or attributed to the defendant, together with the circumstances surrounding them.

(5) The age and physical condition of the defendant.

(6) The age and physical condition of any victim or complaining witness.

(7) Whether the defendant is known to possess or have access to any weapon or weapons.

(8) Whether, at the time of the current offense or any other offense or arrest, the defendant was on probation, parole, aftercare release, mandatory supervised release, or other release from custody pending trial, sentencing, appeal, or completion of sentence for an offense under federal or State law.

(9) Any other factors, including those listed in Section 110-5 of this Article deemed by the court to have a reasonable bearing upon the defendant's propensity or reputation for

violent, abusive, or assaultive behavior, or lack of such behavior." 725 ILCS 5/110-6.1(g)(1)-(9) (West 2024).

No one factor is determinative, and the court must base its decision on an individualized assessment. *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 15 (citing 725 ILCS 5/110-6.1(f)(7) (West 2022)).

¶ 36 We have conducted our own independent review of the proffered evidence and the relevant factors. While the controlled buys were the reason the search warrant was granted, this was not the only factor present in the defendant's case. One factor to consider when determining if the defendant posed a real and present threat is if the defendant is known to possess or have access to any weapons. 750 ILCS 5/110-6.1(g)(7) (West 2024). The record showed that the defendant had two firearms with two types of ammunition in his apartment, with one type of ammunition not matching either firearm, suggesting there was a third firearm that was not located during the search. One firearm was loaded. See *People v. Ross*, 229 Ill. 2d 255, 275 (2008) (explaining that "loaded guns" are part of a category of weapons that are "dangerous *per se*").

¶ 37 As the appellate court found in *People v. Lee*, 2024 IL App (1st) 232137, ¶ 29, "the legislature has specifically pronounced that 'in order to promote and protect the health, safety and welfare of the public, it is necessary and in the public interest to provide a system of identifying persons who are not qualified to acquire or possess firearms.' " *Id.* (quoting 430 ILCS 65/1 (West 2022)). The defendant, who is a convicted felon, is explicitly prohibited from possessing a firearm. *People v. Davis*, 2023 IL App (1st) 231856, ¶ 28; 720 ILCS 5/24-1.1 (West 2024). The defendant's possession of a firearm "goes directly against the legislature's stated purpose of promoting and protecting the safety of the public from the unlawful possession of firearms by certain individuals." *Davis*, 2023 IL App (1st) 231856, ¶ 28; see 430 ILCS 65/1 (West 2024).

13

¶ 38    Another factor as to the defendant's real and present threat includes the fact that he was on probation at the time of the offense. 725 ILCS 5/110-6.1(g)(8) (West 2024). Defense counsel argued that the defendant was in compliance with his probation, but he was expressly prohibited from owning firearms and ammunition, and from engaging in any criminal activity such as participating in and arranging drug deals. The defendant's VPRAI-R score was also in the mid-level risk range. Accordingly, this court agrees with the trial court that, based on the specific articulable facts and the Code's factors, the defendant posed a real and present threat to the community.

¶ 39                              E. Conditions

¶ 40    Once a court determines that the defendant poses a threat to the safety of any individual or the community, the trial court must determine whether the State has met its burden of proving by clear and convincing evidence what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id.* § 110-5(a). In reaching its determination, the trial court must consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the person;[2] (4) the nature and seriousness of the specific, real, and present threat to any person that would be posed by the person's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. *Id*. § 110-5(a). The Code lists no singular factor as dispositive. *Id.* The nature and circumstances of the underlying

---

[2]The defendant's history and characteristics include: "the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug or alcohol abuse, conduct, *** criminal history, and record concerning appearance at court proceedings," as well as "whether, at the time of the current offense or arrest, the defendant was on probation, parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal law, or the law of this or any other state." *Id.* § 110-5(a)(3)(A), (B).

offense is "just one factor to consider in determining whether the threat posed can be mitigated by conditions of release." *People v. Lopez*, 2025 IL App (2d) 240709, ¶ 19.

¶ 41 As we are employing *de novo* review, we will apply these same factors to the evidence proffered. We find the following factors support the conclusion that no condition or combination of conditions could mitigate the real and present threat posed by the defendant. First, the nature and circumstances of the offenses charged. The offense itself involved firearms, and the events leading up to the discovery of the firearms involved the defendant's participation in drug deals. 725 ILCS 5/110-5(a)(1) (West 2024). The defendant argued that he did not "participate" in the drug deals because he did not physically touch the money or illegal drugs. We are not persuaded by this argument. He was involved in scheduling one of the controlled buys and drove McClain to and from the buys on two occasions. The weight of the evidence against the defendant included a law enforcement report regarding the discovery of the firearms and the defendant's admission that he lived alone in the apartment. *Id.* § 110-5(a)(2). The defendant was on probation at the time of the offense, and his criminal history included several traffic offenses, obstructing identification, property damage, and resisting a peace officer. *Id.* § 110-5(a)(3). The defendant stated that additional check-ins with pretrial services could help mitigate any risk, but he was already on probation and required to check in when the offense happened. The defendant stated that home confinement with monitoring would be sufficient to mitigate any risk, but the offense itself occurred within the defendant's apartment. Accordingly, based on our independent review, we agree with the trial court that no condition or combination of conditions would mitigate the threat posed by the defendant.

15

¶ 42                              III. CONCLUSION

¶ 43    Based on the foregoing reasons, we affirm the trial court's orders of December 12, 2025, and March 18, 2026.


¶ 44    Affirmed.